**ARTHUR R. JONES SYNDICATE v. COMMISSIONER OF INTERNAL REVENUE.**

Circuit Court of Appeals, Seventh Circuit.
December 1, 1927.

No. 3910.

1. **Internal revenue** ⊂⇒7(17)—**Transaction held in fact loan rather than sale of preferred stock as affecting right to deduct interest in calculating income.**

Evidence *held* to show that transaction between syndicate desiring loan and lender was

23 F.(2d)—53

in fact a loan, though it took the form of purchase of preferred stock of the syndicate as affecting right of syndicate to deduct interest paid in calculating income.

2. **Internal revenue** ⊂⇒25—**Taxpayer forced to disguise loan transaction as stock sale to conceal usury may show true facts as against government, asserting interest payments are in fact dividends.**

The fact that a taxpayer, in order to obtain loan and to circumvent state usury laws, handled transaction as a sale of preferred stock, *held* not to prevent such taxpayer from showing true nature of transaction, as against government claiming that interest payments are in fact dividends.

Petition by the Arthur R. Jones Syndicate for review of an order of the United States Board of Tax Appeals, opposed by the Commissioner of Internal Revenue. Order reversed, and cause remanded.

David K. Tone, of Chicago, Ill., for petitioner.

Ottamar Hamele, of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Respondent assessed a tax against petitioner upon an alleged income of $29,166.65. The taxpayer protested. It claimed a deduction of this sum as an interest charge. Whether it was paid to one Austin as an interest charge or as a dividend on preferred stock is the sole question presented on this appeal. The statement of facts will be directed to this single issue.

The Jones Syndicate was organized to promote a real estate venture involving the so-called Springer Building in Chicago. This property was under foreclosure and $600,000 was needed to redeem it from an immediate sale. Arthur Jones, the holder of a subsequent mortgage, proposed a syndicate, the stock to be divided into two classes, preferred and common. After selling preferred certificates sufficient to raise all but $250,000, Jones exhausted his certificate selling possibilities. He then sought a loan. Austin, a lender, offered to advance $250,000. He demanded a first lien and interest at the rate of 14 per cent. Other terms and demands need not be recited, for in its presented form this loan was never negotiated. His counsel advised Austin that the interest rate was usurious and Austin feared the Illinois statute might be pleaded against him in case he sought to enforce his contract.

In order to avoid any head-on conflict with the Illinois usury law (Smith-Hurd Rev.

St. 1923, c. 74, § 4 et seq.) Jones revamped his stock set-up and provided for first preferred, second preferred, and common certificates. Our interest is centered in the 2,500 first preferred shares of $100 each, all of which were issued to Austin.

The articles of the syndicate provided that the first preferred shares were to be redeemed "on July 1, 1922, by payment of the par value thereof plus a dividend at the rate of 14 per cent. per annum from the date hereof to the date of such payment." In case of redemption, sale, or other disposition of the property, the proceeds thereof were to be applied in the order following:

(1) "To the payment of all debts and obligations of the syndicate.

(2) "To the payment of the outstanding first preferred shares of the syndicate at the rate of one hundred dollars ($100) per share plus a dividend thereon at the rate of 14 per cent. per annum from the date thereof."

It was further provided:

"If redemption of all of said preferred shares as hereinbefore provided shall not be made on July 1, 1922, there and thereafter all action by and on behalf of the syndicate members, including the matters covered by articles X, XV, and XVI hereof, shall be solely by the vote of the first preferred shares."

The syndicate paid Austin during the first year the following sums: $5,000 August 4, 1921; $6,666.66 September 6, 1921; $5,833.33 October 4, 1921; $5,833.33 November 8, 1921; $5,833.33 December 6, 1921; $5,833.35 January 11, 1922.

Fire destroyed the property before all the first preferred certificates had been retired. A dispute then arose between the parties over the right of Austin to recover interest beyond the date of payment and up to July 1, 1922. Upon Austin's insistence that 14 per cent. be paid beyond the date of payment, the syndicate defended upon the ground that the contract was usurious. Whereupon a compromise was effected.

All the witnesses who testified before the Board of Tax Appeals described the transaction as a loan and stated that the parties made use of the so-called first preferred stock as a mere expedient to circumvent the force and effect of the usury laws.

There are two primary questions the answers to which are decisive of this appeal: First, does the evidence show the transaction between Austin and the Jones Syndicate to be a loan? Second, should the taxpayer be permitted to assert that Austin was a creditor rather than a certificate holder in the syndicate?

[1] The first question must be answered in the affirmative. Aside from the form of the instrument which the parties adopted to embody their contracts, there is no evidence to contradict the asserted relationship of debtor and creditor. Not only does all the oral testimony confirm this conclusion, but the payments and other written evidence strongly confirm the words of the witnesses. Savannah Real Estate Loan & Building Co. v. Silverburg, 108 Ga. 281, 33 S. E. 908; Cook v. Equitable Building & Loan Ass'n, 104 Ga. 814, 30 S. E. 911; Burt v. Rattle, 31 Ohio St. 116; and Wright v. Johnston, 183 Iowa, 807, 167 N. W. 680, cited by petitioner, may all be distinguished in some respects. Each does hold, however, that one who holds a preferred stock certificate to evidence his transaction with the company may be in fact a creditor and not a stockholder. It is evident, from a reading of these decisions and others, that each case must be determined by its own facts. In the instant case the facts evidence more strongly than in the cited cases a loan, the true character of which was concealed to cover the usury feature.

[2] Should the court, as against the government, permit the borrower to disclose what it has in writing disputed in order that it might avoid its tax? This is the second question.

There is some appeal in the argument that the taxpayer is given the choice of identities through or under which he will operate. He may operate as an individual, or he may join with others into a copartnership, a corporation, or other association recognized by the law (a common-law trust). The income tax law sets forth its provisions that enlightened action may be taken by the taxpayer. Having once acted, it may be argued with some force that the taxpayer should be bound by its election.

But the better reasoning sustains the view that a borrower whose necessities lead him to the door of the usurer may always show—by evidence aliunde the contract—the real character of the transaction. The very necessities of the borrower who pays a usurious rate of interest make it necessary for courts to admit his oral testimony to dispute his written word. Houghton v. Burden, 228 U. S. 161, 170, 33 S. Ct. 491, 57 L. Ed. 780, 27 R. C. L. 212. For an additional reason such evidence is admissible against third parties. In re Assessment of Shields Bros., 134 Iowa, 559, 111 N. W. 963, 10 L. R. A. (N. S.) 1061; Sigua Iron Co. v. Greene (C. C. A.) 88 F. 207; O'Shea v. New York, C. & St. L. R. Co. (C. C. A.) 105 F. 559; Mitchell

v. McShane (C. C. A.) 220 F. 878; 22 Corpus Juris, 1292.

We therefore conclude that a taxpayer who borrows money at a usurious rate of interest and who, to conceal the usury, is compelled to execute a document which does not correctly describe the relationship of the parties, may, as against the government, disclose the true relationship of debtor and creditor. Sums by it paid as interest, regardless of the name by which it is called, may be deducted by the taxpayer from its income.

The order is reversed, and the cause remanded for further proceedings in accordance with these views.