## VANDEN BOSCH v. MICHIGAN TRUST CO.

### PROTECTIVE COMMITTEE FOR 1955 PREFERRED STOCK OF THE WORDEN GROCER CO. v. VANDEN BOSCH.

Circuit Court of Appeals, Sixth Circuit.
May 17, 1929.

Nos. 5200, 5201.

Julius H. Amberg, of Grand Rapids, Mich. (Butterfield, Keeney & Amberg, of Grand Rapids, Mich., on the brief), for Vanden Bosch.

Benjamin P. Merrick, of Grand Rapids, Mich. (Travis, Merrick, Johnson & Judd, of Grand Rapids, Mich., on the brief), for Michigan Trust Co.

Clare J. Hall, of Grand Rapids, Mich., for Protective Committee.

Before DENISON, MACK, and HICKS, Circuit Judges.

DENISON, Circuit Judge. These appeals grow out of an equity receivership in the court below of the Worden Grocer Company, a Michigan corporation. The question involved in 5200 is whether Mrs. Hills, a holder of so-called preferred stock, is a creditor. Formerly, under the statutes and decisions of Michigan, there have been the two familiar classes of stock—preferred and common; and it was clear that a preferred stockholder was not a creditor, but was entitled only (in addition to his dividend rights) to a preference over the common stockholder in the distribution of assets after all the debts were paid. We understand that prior to 1893 it had sometimes been provided in the articles or by-laws that the preferred stock might be paid off and redeemed under conditions and limitations there fixed; and to recognize this practice, or for other reasons, the Legislature, in 1893, by Act No. 187, expressly provided for the issue of the preferred stock, with limitations and rights that were appropriate, and stated that the preferred stock "shall be subject to redemption at par at a certain time to be fixed by the by-laws of said corporation, and to be expressed in the certificates therefor." The same statute fixed the dividend and voting rights of the preferred stock, and specified no preferential right as to capital, except to provide: "If for any reason said corporation shall cease business or become in-

solvent, then after the payment of all liabilities and debts, the remainder of the assets of said corporation shall be applied, first in payment in full of all preferred stock and then unpaid dividends due thereon, and the balance divided pro rata, share and share alike, among the holders of the common stock." This phrase, "shall be subject to redemption," at the time fixed may have been optional or obligatory—a privilege or a duty. It may be inferred that controversies arose on this point. At any rate, in 1917, by Act No. 254, these words "shall be subject to redemption" were superseded by the words "shall be redeemed." The statute of 1917 also contained no provision giving or protecting any capital priority to the preferred stock, save as it reenacted the above quoted provision of the act of 1893.

In 1919, the articles and by-laws of the corporation had been so amended as to provide for an issue of preferred stock and "that all of said preferred stock shall be redeemed by the corporation at par on January 1, 1925," reserving an option to redeem earlier at a specified premium any or all of such preferred stock. Later, Mrs. Hills purchased her preferred stock, and the certificate issued to her contained the recital, "the preferred stock shall be redeemed at par plus accrued and unpaid dividends on the first day of January, 1925, and may be redeemed at the option of the company on any dividend date prior thereto" at a specified premium and upon specified notice. Prior to January 1, 1925, the total of this preferred stock issued and outstanding was about $800,000. The corporation had foreseen the impracticability of withdrawing from the business money enough to pay off this stock, and had provided for a new issue of preferred stock, maturing in 1955, to be substituted for the old as far as possible, and which would be sold to get new money to pay off those old preferred stockholders who would not substitute. Accordingly, many preferred stockholders then or later exchanged for certificates of the new issue, some refused to exchange, and by sufficient insistence procured payment in cash, and others, including Mrs. Hills, had declined to accept the new stock, but had not taken any steps to compel payment, when, about January, 1926, it was discovered that the corporation had suffered large losses theretofore unknown to directors and stockholders, and that its credit was nearly or quite exhausted. Thereupon some nonresident creditors filed a bill in the nature of a creditor's bill, alleging that the assets were much greater than the liabilities, but that a receivership was necessary in order to preserve the going business; the corporation consented; a receiver was appointed of all the property of the corporation, and was vested with all the property and rights of every kind whatever of the corporation, with authority to carry on the business and to sell and dispose of any of the property of the corporation, if in the ordinary course of business, or, with the permission of the court, even if not in the ordinary course of business. It should be added that in July, 1925, the corporation had declared the regular semiannual dividend (3½ per cent.) upon the issue of old preferred stock then outstanding, and checks purporting to be for this dividend had been received by the stockholders, including Mrs. Hills, without objection or any question as to the character of the payment.

Pursuant to the order that all creditors file their claims with the master, Mrs. Hills asked allowance of her debt for $5,000, based upon the promise contained in the certificate, the master disallowed the claim, and the District Court on exceptions affirmed the disallowance, holding that Mrs. Hills was not such a creditor as to be entitled to parity with the others. Appeal No. 5200 is taken in her interest, and challenges this conclusion.

█ It is the claim of the appellant that prior to the maturity date her status was mainly that of a creditor holding an unmatured debt, although with that status modified in some particulars, but that, upon the arrival of the redemption date, she became, in all respects, a creditor entitled to demand immediate payment of the debt in full. The receiver, in the interest of general creditors, claims that she continued to be merely a preferred stockholder holding a broken promise to redeem, and that, at least until she took some steps to enforce the promise, she had that status only. So far as we are advised, or can learn, this question is practically one of first impression. There is no construction by the Supreme Court of Michigan; similar statutes calling for this imperative redemption, if they exist elsewhere, do not seem to have been passed upon; and the intent of the Legislature must be inferred, as well as may be, without help of this kind.

We see no basis for thinking that the mere arrival of the maturity date can work any magic change in the true character of the relationship. If appellant was dominantly a stockholder in 1924, she continued to be in 1925. She held the certificate, she had never given up the dividend or voting rights, she had only a promise to redeem—and that she had always had. If appellant's conten-

tion is now right, it must be, we think, because under this statute so-called preferred stockholders are from the beginning dominantly creditors—creditors, true, with limited and deferred rights, but none the less eventually to receive their money back like other creditors. To say this is to work a revolutionary change in the long accepted principles; those who are to be asked to give credit must revise familiar standards of credit; and a corporation which, so far as stock was represented by commercially available assets, had only preferred stock, would have no basis of credit whatever, because its liabilities and commercial assets would evenly balance. If the Legislature intended such complete upsetting of known standards, it could easily have used express words; on the contrary, it is said only, "shall be redeemed"; and continued to provide that in case of liquidation the preferred stock shall be subject to all debts. The declaration, "shall be redeemed," is not inconsistent with the idea that the mere unperformed obligation to redeem holds the same relative status in the marshaling of liabilities which the preferred stock held the day before maturity. Any attempt to apply appellant's theory that she was always essentially a creditor, or that maturity of itself transformed her into a creditor, on equal footing with those who had given credit in reliance on her subordinate status, runs into serious, if not hopeless, difficulty in innumerable practical situations which can be supposed. Upon the whole, we are convinced that appellant first became and until the receivership continued to be a stockholder, and had not become a creditor in such a way as to take, upon distribution, equal rank with those who had always been creditors.

Such a receivership does not necessarily change any ultimate rights; it does supersede ordinary corporate action by the corporation. It holds in statu quo conflicting matters of interest in the property and funds. Thinking as we do that claimant's transmutation from stockholder to creditor was not completed merely by the hand of the clock, we do not consider what her rights would have been if she had, before receivership, recovered judgment, or even brought suit, affirmatively repudiating longer tolerance of her ostensible position. This consideration alone is enough to distinguish from Mannington v. Railroad Co. (C. C.) 183 F. 133, and Durand v. Brown (C. C. A. 6) 236 F. 609.

It is suggested that this view permits the corporation to show favoritism by using all its available money to pay off and redeem a few selected preferred stockholders; thereby giving them all the benefits of the creditor status, and leaving the less favored ones in a secondary class. This may be true, but, if so, it is the inevitable result of that interpretation which in spite of this difficulty seems to us the more reasonable. If it eventually turned out that such action had not been within the reasonable limits of corporate management, and that other nonpaid preferred stockholders were prejudiced thereby, the circumstances might or might not justify bringing these assets back for some more equitable distribution; no such case is before us; but, in so far as any such evil could not thus be corrected, it must be endured as the result of confused and incomplete legislation. It is also clear that, whatever might be done after maturity—short of payment—to change the stockholder-creditor status, nothing effective had been done in this case before this receivership; and that by this end, or at least suspension, of the corporation's power to carry on its affairs, the rights of all interested became as between themselves fixed and definite.

These views lead to an affirmance in No. 5200.

The other appeal—5201—presents the relative rights of the old preferred stockholders who had not been paid off and of those who had accepted the new issue (due in 1955) in substitution for the old stock or had purchased the new outright. The decree below gave relative priority to the remaining stockholders of the 1925 maturity. Those of the new class insist that the statute and the articles contemplate no classification of preferred stock, and that they all must share alike. Many interesting questions are forcibly argued in this connection; and counsel for 1955 stockholders particularly points out that the corporate life of the Worden Company, expiring in 1925, has been duly extended for another period of 30 years; that the Michigan extension statute provides that the corporation after extension shall be the same company with the same stock and the same liabilities; that the resolution authorizing the extension and other corporate actions specified in effect that new stock should be exchanged for the old, share for share and kind for kind; and thereupon insists that the maturity date of the 1925 stock was extended, and that no distinction can be made in the relative rank of the two stock issues. We think this overlooks the true effect of the existing promise to redeem in 1925. This promise was authorized by statute, it was relied upon by the investor, and we see no reason why it is not essentially a contract be-

646

yond the power of the corporation to change materially without the consent of the investor. It follows that the statutory provisions for extension and the proceedings here taken must be regarded as subject to the performance of the duty created by this promise. The power of the corporation to amend its articles or its by-laws cannot extend to the making of a change which would amount to a repudiation of a contract which is distinct from, and in addition to, all ordinary matters of internal management, regulation, and control.

This case is unique, in that it depends upon the unique character of this particular preferred stock, and we think is controlled by a special consideration here present. This is, that all who accepted the new preferred must have done so with the understanding that the old preferred holders must be paid off in so far as they would not accept the new in substitution. This meant either that money must be borrowed to pay off the nonconsenting old stock or else that the existing corporate assets must be used therefor. In either case, it was necessarily understood that the amount necessary to redeem the nonconsenting old certificates correspondingly diminished the value and affected the status of the new stock, either by increasing the liabilities prior to it or by diminishing the assets supporting it. It was therefore immaterial to this new stock whether the old stock was paid off in a way to recognize priority over the new or whether it remained unpaid with equivalent priority. It is another way of expressing the same thought to say that the 1925 stockholders continued to hold that relative position as to the ordinary debts accruing while the corporate records continued to show them to be stockholders, but were relatively creditors as to the 1955 stockholders, who became such after the 1925 stock had matured into a past-due obligation, which all recognized must be paid.

In 5201 also the decree is affirmed.