## KENTUCKY RIVER COAL CORPORATION v. LUCAS.

### No. 1278.

District Court, W. D. Kentucky, at Louisville.
July 9, 1931.

Woodward, Hamilton & Hobson, of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Kelly Kash, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge.

This is a suit for a refund of income taxes for the year 1923. The whole case hinges on whether or not the so-called debenture stock issued and sold by the plaintiff was, in fact, capital stock, or represented borrowed money. These securities were sold at 50 per cent. discount. The plaintiff contends that the so-called 6 per cent. dividends on this stock should be treated as interest paid on borrowed money and allowed as a deduction, under section 234 of the Revenue Act of 1921 (42 Stat. 254), and that it was likewise entitled to amortize, over a period of ten years, the discount at which this stock was sold, and to deduct the proper amount of this discount for this purpose for the year 1923.

I am unable to agree with the plaintiff's contention that the amount represented by this debenture stock must be treated as borrowed money. The plaintiff is a Virginia corporation. Under the law of that state, every corporation organized thereunder is given the power to create two or more kinds of stock, of such classes, with such designations, preferences, and voting powers, or restrictions or qualifications, as shall be expressed in the charter or articles of incorporation. Its articles of incorporation were drawn in conformity to the statutes of Virginia, and, as therein required, the articles of incorporation set out the authorized amount of capital stock and the character thereof. The so-called debenture stock is specifically listed in the articles of incorporation as a part of the capital stock structure. The articles of incorporation further provide that the $500,000 of debenture stock and $500,000 of the common stock were to remain in the treasury and to be disposed of as treasury stock, for the benefit of the corporation as its necessities might require, with the specific requirement that the proceeds of the $500,000 debenture stock was to be used exclusively in the discharge of indebtedness owing by the five corporations whose property was to be acquired by the plaintiff, the payment of which indebtedness was to be assumed by the plaintiff, or for betterments,

prospecting, or acquiring additional property.

It is quite clear from the record that the consideration paid to the five corporations whose property was acquired was $2,000,000 of preferred stock, $2,000,000 of the common stock of the plaintiff corporation, and the assumption and the discharge by the plaintiff of not exceeding $300,000 of indebtedness owing by the selling corporations, and for this latter purpose the $500,000 of debenture stock was to be first used.

The entire capital of the plaintiff corporation was represented by the property transferred to it by the five selling corporations, and the debenture stock is just as much reflected in this property as is the common and preferred stock.

The debenture stock, when issued, was styled "debenture stock," and provided that the stipulated dividend of 6 per cent. should only be paid out of the surplus profits, earnings, or assets of the corporation, a typical provision as to preferred stock, as distinguished from ordinary indebtedness.

When the corporation came to comply with the Virginia law, which required to be filed with the corporation commission of that state a statement of its financial organization plan, the debenture stock was listed as a part of the capital stock structure. The debenture stock was placed upon the market by selling one share of it and one share of the common stock as a single unit, which is a common corporate practice in the disposition of preferred stock. In its income tax reports for the years 1918 to 1921, both inclusive, the plaintiff reported the amount received from the sale of its debenture stock as invested capital, and this amount was treated as invested capital in determining the war profits credit, under the Revenue Act of 1918, and the excess profits credit, under the Revenue Acts of 1918 and 1921 (40 Stat. 1057; 42 Stat. 227), to which plaintiff was entitled for each of the years mentioned. In its capital stock returns to the United States government for the years 1916 to 1922, both inclusive, the plaintiff reported as a part of its capital stock the amount of the debenture stock which was outstanding for each of the respective years.

On the facts so far related, it may well be doubted if plaintiff would undertake to claim that these debenture shares were evidences of indebtedness instead of part of the capital stock structure. Plaintiff insists, however, that the unconditional undertaking on

the part of the corporation to redeem these securities at par at the expiration of ten years from the date of their issual, and the further undertaking on the part of the corporation to incur no indebtedness in excess of $25,000 while any of the debenture stock was outstanding, give to these debenture shares the characteristics of a debt, and take from them the true characteristics of capital stock. I do not think that the obligation not to incur any indebtedness in excess of $25,000 while this stock was outstanding is inconsistent with the government's theory that these debenture shares were really capital stock. A very common practice in the issual of the ordinary form of preferred stock is to provide that the corporation's indebtedness shall not exceed a specified amount, so long as any of the stock is outstanding. Nor do I think the unconditional undertaking to redeem the stock at par at the end of ten years destroys its nature as capital stock. The stockholders among themselves undoubtedly had the right to make such an agreement. If its enforcement rendered the corporation incapable of meeting its obligations to those general creditors whose claims were within the $25,000 debt limitation, I have no doubt the courts would hold that the rights of the holders of these debenture shares were subordinate to the rights of these general creditors.

I am constrained therefore to agree with the Board of Tax Appeals in its decision involving exactly this same question with the same taxpayer, and reported in 3 B. T. A. 644.

The stipulation of facts filed in this case will be treated as my finding of facts, for the purpose of appeal.