**COMMISSIONER OF INTERNAL REVE-
NUE v. PROCTOR SHOP, Inc.**

No. 7735.

Circuit Court of Appeals, Ninth Circuit.

March 20, 1936.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and Francis I. Howley, Sp. Assts. to Atty. Gen., and Harry Marselli, of Washington, D. C., for petitioner.

Dey, Hampson & Nelson, Roscoe C. Nelson, and Richard R. Morris, all of Portland, Or., for respondent.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This petition involves income taxes of the respondent corporation for the fiscal year ending January 31, 1930.

Respondent is an Oregon corporation organized on October 6, 1927. Upon its organization it purchased the assets of an existing business known as Proctor's, Incorporated, which was engaged in selling ready to wear women's apparel on the installment basis. Respondent took over the assets and business as of October 1, 1927, and continued to conduct the business on the installment basis.

Prior to the organization of respondent, conferences relative to the question of financing the venture were held between M. H. Holtz, who became president of respondent, and his father, Aaron Holtz. Aaron Holtz was willing to lend the necessary funds to the contemplated organization, but was not willing to accept stock because he desired to be assured that his advances would be repaid, and he also wanted a definite income from the funds. It was deemed inadvisable to issue bonds to cover the loans, as that would affect the credit of the corporation. It was finally decided to have the new corporation is-

sue what was denominated "debenture preference stock" to Aaron Holtz as evidence of the amounts advanced by him.

Respondent's articles of incorporation filed with the corporation department of the state of Oregon on October 6, 1927, state that the authorized capital stock consists of 10 shares of common stock of the par value of $100 each, and 990 shares of debenture preferred stock of the par value of $100 each.

Upon incorporation 990 shares of the stock described as "debenture preference stock" were issued to Aaron Holtz.

In its annual report to the state corporation department for the year ended January 31, 1928, respondent reported its authorized capital stock to consist of 10 shares of common stock and 990 shares of debenture preference stock, each of the par value of $100 per share.

Amounts representing 6 per cent. per annum on the amount of $99,000 were paid by petitioner to Aaron Holtz, and accrued on its books for the period ended January 31, 1928, and its fiscal years ended January 31, 1929 and 1930. The amounts so paid and accrued were claimed as interest deductions by respondent and were disallowed by the commissioner.

The articles of incorporation of respondent provided for a stock structure as set out in the facts above stated, which were found by the board, and, in addition, provided that the said "debenture preference stock" should be entitled to cumulative "interest" at the rate of 6 per cent. per annum, payable quarterly, commencing October 1, 1927, before any dividends were paid on the common stock, and that the common stock was entitled to "dividends" in excess of said 6 per cent. In addition, provision was made in the articles that in the event of dissolution of the corporation, or of distribution of the assets that the debenture preference stock outstanding at that time be first paid at par, plus all accumulated unpaid interest, and the remainder of the corporate assets be divided ratably among the holders of the common stock. The voting power was vested exclusively in the holders of the common stock. The corporation, in the articles, reserved the right to redeem any number or all of the certificates of debenture preference stock at par plus accumulated interest at any time after December 1, 1927, and bound itself to redeem monthly, be-

ginning December 1, 1927, debenture preference stock of the par value of $1,500 as a minimum. Failure of the corporation for a period of two years to pay any quarterly interest thereon, as the same became due and payable, rendered the corporation in default as to such payment and entitled the owners of certificates as to which such delinquency occurred, to declare the principal amount of such certificates due and to institute action against the corporation for the par value of said certificates and the accumulated interest thereon. A further provision read: "The rights of the holders of debenture stock shall, however, be limited in the following respect: In the payment of their several claims all general creditors shall rank superior to the holders of debenture preference stock, but all holders of debenture preference stock shall rank pari passu with each other and superior to holders of any other class of stock of the corporation."

Petitioner states the question to be: "Whether amounts paid by the taxpayer corporation to the holder of 'debenture preference stock' were deductible as interest or whether such amounts were in the nature of a dividend on preferred stock." If the sums paid were interest, they were deductible in arriving at the taxable net income of the taxpayer; if they were dividends, they were not deductible. Section 23(b) of the Revenue Act of 1928, 45 Stat. 791 (26 U.S.C.A. § 23 and note); Article 141 of Treasury Regulations 74, promulgated under the Revenue Act of 1928.

The commissioner argues that: "The nature of the certificates issued and the manner in which they were authorized show that they were certificates of preferred stock and not evidences of ordinary indebtedness."

"The transcript does not contain the evidence upon which the Board of Tax Appeals acted, and, consequently, the question whether or not the evidence sustained the findings of the Board of Tax Appeals cannot be considered." Winnett v. Helvering, 68 F.(2d) 614, 615 (C.C.A.9). See also Wishon-Watson Co. v. Commissioner, 66 F.(2d) 52, 54 (C.C.A.9) ; Ox Fibre Brush Co. v. Blair, 32 F.(2d) 42, 68 A.L.R. 696 (C.C.A.4), affirmed Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733. We can therefore, inquire only whether the findings support the conclusion of the board.

■ The Board of Tax Appeals well said in its opinion in the instant case: "None of the decided cases lay down any comprehensive rule by which the question presented may be decided in all cases, and 'the decision in each case turns upon the facts of that case.' * * * In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it. On this the designation of the instrument issued by the corporation, while not to be ignored, is not conclusive, * * *. The real intention of the parties is to be sought and in order to establish it evidence aliunde the contract is admissible. * * * If the evidence establishes 'that dividends paid are, according to the intent of the parties in fact interest, and the stock on which the dividends are paid is merely held by the creditor as security, it makes no difference what the reason was for paying it in that form.' "

■ In Arthur R. Jones Syndicate v. Commissioner of Internal Revenue, 23 F.(2d) 833 (C.C.A.7), a tax deficiency was assessed against the taxpayer who claimed the deduction of a sum as an interest charge. Whether this sum was paid to one Austin as interest or as a dividend on preferred stock was the question presented. The syndicate had been formed to promote a real estate venture but, after the stock selling possibilities had been exhausted, the syndicate was $250,000 short of its needed funds. Austin was willing to lend the money, but demanded 14 per cent. interest. In order to avoid conflict with the state usury law, the stock structure of the syndicate was revamped to provide for several classes of stock. One of these classes provided for the payment of 14 per cent. dividends and for a definite redemption date thereafter. All 2,-500 shares of this classification were issued to Austin at the par value of 100. The court said, 23 F.(2d) 833, at page 834:

"All the witnesses who testified before the Board of Tax Appeals described the transaction as a loan and stated that the parties made use of the so-called first preferred stock as a mere expedient to circumvent the force and effect of the usury laws.

"There are two primary questions the answers to which are decisive of this appeal: First, does the evidence show the transaction between Austin and the Jones Syndicate to be a loan? Second, should the taxpayer be permitted to assert that Austin was a creditor rather than a certificate holder in the syndicate?

"The first question must be answered in the affirmative. Aside from the form of the instrument which the parties adopted to embody their contracts, there is no evidence to contradict the asserted relationship of debtor and creditor. Not only does all the oral testimony confirm this conclusion, but the payments and other written evidence strongly confirm the words of the witnesses. * * *

"We therefore conclude that a taxpayer who borrows money at a usurious rate of interest and who, to conceal the usury, is compelled to execute a document which does not correctly describe the relationship of the parties, may, as against the government, disclose the true relationship of debtor and creditor. Sums by it paid as interest, regardless of the name by which it is called, may be deducted by the taxpayer from its income."

The Circuit Court of Appeals for the First Circuit said, in Wiggin Terminals, Inc., v. United States, 36 F.(2d) 893, 898:

"The payment of interest in the form of dividends does not change its character when it is shown that the reason for its taking that form was to avoid a usurious contract, *or for some reason personal to the parties concerned.* Arthur R. Jones Syn. v. Commissioner, supra.

"If it be shown that dividends paid are, according to the intent of the parties, in fact interest, and the stock on which the dividends are paid is merely held by the creditor as security, it makes no difference what the reason was for paying in that form. The courts look to the real character of the payment, and construe the statute liberally in favor of the taxpayer." [Italics ours.]

The language of this court in Elko Lamoille Power Co. v. Commissioner, 50 F.(2d) 595, 597, used in distinguishing the Jones Case serves also to distinguish the Elko Case from the instant case. To quote: "There were other stipulations not here applicable. The preferred stock was a direct obligation with a definite date for payment. In the instant case the preferred stock could, *at the option of the corporation,* be redeemed within three years at

110. There was, however, no obligation to redeem. In the Jones Syndicate there was an express provision to pay at five years. It was in effect a bond payable in five years." The opinion went on to say, "Necessities may permit evidence aliunde of the contract to unfold the real character of the transaction."

Here there was no usurious contract to be avoided, but there was a reason personal to the parties concerned, namely, that Aaron Holtz was unwilling to become an investor in the corporation to be formed, but was willing to lend it money, and the transaction was placed in that form so as to preserve the corporation's credit. Further, the corporation bound itself to redeem this debenture preference stock at a minimum of $1,500 per month, beginning December 1, 1927, which indicated that these certificates were considered a debt.

In view of the facts found and the foregoing authorities, and adopting the reasoning of the Board of Tax Appeals, above quoted, as our own, we hold that the facts so found support the decision of the Board. Therefore, the decision of the Board of Tax Appeals is affirmed.