83 F.2d 724 (1936)
In re PHNIX HOTEL CO. OF LEXINGTON, KY.
SECURITY TRUST CO. et al.
v.
BAKER et al.
No. 7319.
Circuit Court of Appeals, Sixth Circuit.
May 13, 1936.
*725 J. R. Bush, of Lexington, Ky. (Hunt & Bush, George R. Hunt, Rufus Lisle, A. S. Moore, and D. C. Hunter, all of Lexington, Ky., E. B. Rose, of Beattyville, Ky., and S. S. Carrick, William B. Gess, and Job D. Turner, Jr., all of Lexington, Ky., on the brief), for appellants.
Frank S. Ginocchio and Henry Duncan, both of Lexington, Ky. (Frank S. Ginocchio and Allen, Duncan & Duncan, all of Lexington, Ky., on the brief), for appellees.
Before MOORMAN, HICKS, and SIMONS, Circuit Judges.
SIMONS, Circuit Judge.
In a debtor proceeding for reorganization under sections 77A and 77B of the Bankruptcy Act (11 U.S.C.A. §§ 206, 207), this controversy arose as between preferred stockholders of the debtor corporation who had converted their stock into bonds, and unsecured creditors who had become such prior to the conversion. Decision requires construction of Kentucky corporation law, and more particularly of section 564, which as amended by an act of 1910 (chapter 79) has become section 564-1, Kentucky Statutes. The District Court denied priority to the bonds and their holders have appealed both under sections 24a and 24b, as amended by Act May 27, 1926, § 9 (11 U.S. C.A. § 47 (a, b). Since a question of law is presented cognizable within the narrower scope of section 24b, we find it unnecessary to determine which mode of appeal was proper.
Section 564 was part of the general corporation law of Kentucky enacted in 1893, and conferred upon corporations powers in respect to the issue of preferred stock, its priority, the manner of its increase or decrease, and the payment of dividends thereon. The act of 1910 (chapter 79) purported to enlarge the corporate powers to the extent that a corporation "may provide that the holders of its bonds shall be entitled, upon terms prescribed by it, to convert the same into the stock of the corporation, whether common or preferred, and that holders of its preferred stock shall be entitled, upon terms prescribed by it, to convert the same into the bonds or other obligations of the corporation." Section 1 (Ky.St. § 564-1). To the amendatory act was added an immediate effect clause which reads: "In view of the necessity for speedily providing a means to enable corporations to secure the necessary funds for developing their property by giving to those who may purchase their stock and bonds the right of conversion herein granted, an emergency is declared to exist." Section 2.
On December 19, 1921, the debtor's articles of incorporation were amended to create a capital structure consisting of $650,000 of common, $750,000 of first preferred, and $250,000 of second preferred stock. It was also provided that both classes of preferred stock might be converted into bonds or other obligations upon terms to be prescribed by the board of directors. On January 2, 1922, the debtor executed and delivered to the Security Trust Company as trustee two mortgages upon all of its real estate and other assets. The first mortgage was to secure bonds in the amount of $750,000, to be held, issued, and used by the trustee for the purpose of exchanging them for shares of first preferred stock; and the second mortgage, made subordinate to the first, was to secure $250,000 of bonds to be exchanged for second preferred stock. Both mortgages were recorded. All of the new stock was sold during 1922 at par, the preferred stock certificates incorporating provisions for their conversion into mortgage bonds. Contemporaneously with the execution of the mortgages the debtor executed the bonds of each class and placed them in the *726 hands of the trustee for the indicated purpose.
No preferred shares were converted into bonds until the period between May 20, 1933, and October 22, 1934, during which substantially all first preferred stockholders, and a majority of second preferred stockholders, exercised their right of conversion. Prior to that, however, in 1931 and 1932, the contesting creditors had made advances to the debtor, evidenced by unsecured notes. A trustee appointed by the court in the debtor proceeding marshaled the claims against it, reporting the bonds as valid secured claims entitled to priority over the note holders to the extent of the respective mortgage liens. Exceptions being filed to the report of the trustee in respect to priority, they were sustained and a decree entered subordinating the bonds to the notes, though otherwise adjudging them valid and secured.
Briefly, the contention of the appellants is that whatever may have been the public policy of the state with respect to the rights of stockholders as against creditors prior to the enactment of the 1910 statute, that act marked a change in state policy, with its purpose indicated by the immediate effect clause; that the effect of the change was to permit corporations to issue preferred stock convertible into bonds secured by mortgage upon the corporation's property and having priority over all other debts; that this authority was exercised in conformity with the statute by the present debtor, and resulted in a contract between it and its preferred shareholders whereby the right to convert the shares into bonds attached to the certificates upon their issue; and that such right may not be subordinated to other claims whether such arose prior to or after the conversion of the stock into bonds. This, it is said, is the necessary meaning of the 1910 amendment; for if it means less it means nothing; since all other rights of preferred stockholders could have been granted to them under the original statute, and so under familiar rules of statutory construction the amendment must be construed as contemplating a change in the law; for we may not impute to the legislature a merely vain enactment.
The precise question here involved has never been decided in the Kentucky courts. Many local decisions are cited and discussed in the briefs, but none involves conflicting claims of preferred stockholders who have converted their shares into bonds and antecedent creditors. Most of the Kentucky cases are sufficiently reviewed in the opinion of the District Judge (13 F. Supp. 229), and no purpose will be served by analyzing them here. Under settled principles we view state precedents as authoritative only to the extent of the precise questions decided. Ne-Bo-Shone Association, Inc., v. Hogarth, 81 F.(2d) 70 (C.C.A.6); Philadelphia National Bank v. Raff, 76 F.(2d) 843 (C.C.A.6). The question here is one of first impression.
It is a fundamental rule of corporation law that one cannot be at the same time both a stockholder and a creditor of a corporation in respect to the same funds hazarded in the corporate enterprise. The two relations are antipodal. This principle is not only rooted in sound public policy, but grows out of the very nature of corporations. The assets represented by corporate stock are the basis of its credit, and provide a fund for the payment of its debts. No part of them may be withdrawn for the purpose of retiring shares until debts are paid. Hamlin v. Toledo Railroad Co., 78 F. 664, 36 L.R.A. 826 (C.C.A.6). It may be granted that the state may authorize the creation of securities which though denominated preferred shares are debts of the corporation and to give to such debts priority over other debts, since nomenclature is not conclusive as to the essential character of an instrument. Mathews v. Bradford, 70 F.(2d) 77, 78 (C.C.A.6). But to do this is to work a revolutionary change in long accepted principles [Vanden Bosch v. Michigan Trust Co., 35 F.(2d) 643 (C.C.A.6)], and those who are to be asked to give credit must revise familiar standards of credit. If the Legislature intends such complete upsetting of known standards it may easily use express words to indicate such intent. This is a principle of universal application.
The 1910 act gives no indication of such revolutionary legislative intent. It is the source of new corporate power. It authorizes the conversion of preferred stock into bonds and bonds into stock, but neither expressly nor by necessary implication does it give to such bonds priority over debts accruing prior to conversion. The contention that unless it does so it gives corporations no power greater than was possessed under the old law is unavailing. It may be true that corporations prior to 1910 could provide for redemption *727 of preferred shares and that such redemption might be in cash or in securities. But the power to authorize redemption of preferred stock implies power to compel surrender of stock for redemption. The right to redeem is not unilateral and may under the statute be exercised by the corporation as well as by the stockholders. At least, it appears to have been without question so exercised. Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S.W. 1011, 39 L.R.A.(N.S.) 1007. The right to convert stock into bonds, without a corresponding obligation to do so is, however, something new and alone purges the 1910 act of futility  without compelling construction to impair the rights of existing creditors  whatever effect, if any, it may have upon the rights of subsequent creditors, not here involved. And this new right even so limited is not insubstantial, for it enables stockholders, who have lost confidence in management or are fearful of impending change in corporate policy, promptly to change from stockholder to creditor status.
Aside from this, however, the presumption that the Legislature intends a change in existing law is but one of many aids to construction and must yield when other considerations repel the asserted interpretation or limit its scope. Without express or more clearly implied purpose we cannot impute to the Legislature an intent to overturn a doctrine in respect to corporate capital so long and so universally recognized, to permit corporate debts parading as stock to escape the burden of its revenue acts, or the condemnation of its usury laws, or to impair if not wholly destroy corporate credit. All of these consequences must follow if we accept the construction urged upon us. If corporate capital in trust for creditors may at will be translated to corporate liability whenever clouds appear in the financial heavens, then the asserted purpose of the statute is defeated rather than effectuated, as soon as its implications are understood. It will be observed that the amendment permits conversion of bonds into stock as well as of stock into bonds, and there is no bar to the simultaneous and unlimited exercise of both rights. If they are to defeat creditors, there is no reason why they may not be alternately exercised, and so permit preferred stockholders to don the creditor cloak in foul weather and to cast it off when financial skies clear. Surely such fantastical result could not have been in contemplation.
Moreover section 560 of the Kentucky Statutes provides that "any liability of corporations, or the stockholders, * * * or the rights or remedies of the creditors thereof, * * * shall not in any way be lessened or impaired by * * * decrease in the capital stock of any corporation." Conversion of stock into bonds is a decrease in capital, and a lessening of the rights or remedies of creditors. Section 560 is, like section 564, also declaratory of public policy. The 1910 act does not expressly repeal it and under established rules we are obliged to give effect to both if they can be harmonized, for it is fundamental that repeals by implication are not favored. The two may be harmonized by refusal to give the 1910 amendment such construction as will give bondholders priority over the rights of creditors whose claims accrued prior to the conversion of stock into bonds. Further than that we are not obliged to go. The analogy sought to be drawn by the appellants between the existing bonds and those of corporations issued for use from time to time as the needs of the corporation arise is not persuasive. Such bonds are issued only in exchange for money or its equivalent, and what is paid for them augments the assets of the corporation available for creditors. The conversion here increases liabilities without compensatory increase of assets available for their liquidation. Nor are the bonds or stock here involved to be confused with such obligations as were sustained in Heller v. National Marine Bank, 89 Md. 602, 43 A. 800, 45 L.R.A. 438, 73 Am.St.Rep. 212, in respect to priority. There the Maryland statute authorized and the corporation unequivocally constituted the preferred stock a prior lien upon the franchises and property of the corporation. The creditor status existed from the beginning. It was never anything else, and could not be assumed and discarded at will.
In short, what the debtor corporation here endeavored to do under professed authority of the amendatory act was in the language of the appellants to create "a new species of preferred stock." If their contention is sound there was created a hybrid hitherto unknown to our law  stock for the purpose of yield, taxation, and in relation to usury laws, but bonds in respect to security. It is asserted that the bonds *728 became contingent, conditional, and potential debts of the corporation upon their execution. But there can be no debt without a creditor, and until the stockholder converted his stock he remained a stockholder whatever his potential rights, if and when exercised might have been  and as a stockholder he was subordinate to creditors. The aphorism to the effect that one may not simultaneously consume and preserve still accurately reflects human experience.
Decree affirmed.