**UNITED STATES v. TITLE GUARANTEE & TRUST CO.**

No. 9155.

Circuit Court of Appeals, Sixth Circuit.

Feb. 17, 1943.

Louise Foster, of Washington, D. C. (Samuel O. Clark, Jr., J. Louis Monarch, and Louise Foster, all of Washington, D. C., Donald ,C. Miller, of Cleveland, Ohio, and Gerald P. Openlander, of Toledo, Ohio, on the brief), for appellant.

George R. Effler, of Toledo, Ohio (Fraser, Effler, Shumaker & Winn, of Toledo, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The question to be determined on this appeal is whether amounts paid by a corporation on certain certificates, designated as preferred stock, should be treated as interest payments on indebtedness, or as dividends on stock. The district court held that the payments were interest on indebtedness and, therefore, properly deductible from gross income for tax purposes under § 23, Title 26 U.S.C.A. Int.Rev.Code.

In 1929, appellee, the Title Guarantee and Trust Company, was engaged in the mortgage loan, and title and abstract business. Part of its capital stock consisted of 160,000 shares, preferred over common stock as to assets and earnings, with a dividend rate of 7%, payable quarterly, and with no fixed maturity date.

In a transaction whereby it acquired the title business of the Toledo Title Company (owned by the Toledo Mortgage Company), appellee divested itself of its mortgage

business by transferring its mortgages to a new company, which it organized for this purpose, named the Central Securities Corporation.

Appellee then canceled its old preferred stock and issued new "preferred stock," here in question, in the amount of $150,000. With this preferred stock, appellee acquired $75,000 in mortgages from the Toledo Mortgage Company, by purchasing the common stock of this company for a like amount of the new preferred stock. Appellee further acquired $75,000 in mortgages from its newly formed Central Securities Corporation, by the issuance of $75,000 of its new preferred stock to that company. Certain of the mortgages, acquired by appellee, were deposited with the treasurer of the State of Ohio, in compliance with the law, to the amount of $50,000, and the balance of $100,000 of the mortgages was included in appellee's assets in order to strengthen its capital structure. In brief, the result of the transaction was that appellee acquired all of the mortgages of the Toledo Mortgage Company and the Central Securities Corporation, totaling $150,000, and each of these companies became the owner of $75,000 of appellee's newly issued "preferred stock."

During the course of the negotiations leading up to the completed transaction, the officers of the Toledo Mortgage Company requested that appellee pay for the mortgages acquired, by promissory note or definite obligation of some nature. The president of appellee corporation objected to such a method of payment on the ground that it would destroy the plan for strengthening appellee company, inasmuch as such obligations would have to be set up on the liability side of the company's balance sheet on a parity with other creditors; and the controversy was finally resolved by the issue of the new preferred stock, containing the various terms which give rise to the appeal before us.

In the newly issued stock it was provided that the holders should be entitled to receive, when and as declared by the board of directors, dividends at the rate of 6% per annum, payable quarterly on stated dates, before any dividend or any other distribution should be declared on any other class of shares. It was further provided that such dividends should be cumulative from and after July 1, 1929, and that if default should be made in the payment of any such quarterly dividends after they became cumulative, the deficiency should be made good before any dividend or other distribution should be declared on any other shares.

Furthermore, it was set forth that as long as any such preferred shares were outstanding, no dividends should be declared on any other stock unless all past quarterly dividends on the preferred shares should have been paid, and the agreed quarterly dividend thereon should have been declared and funds set aside for the payment thereof; and that no dividends should be declared on other stock if, after the payment thereof, the net current assets of the corporation would be less than the aggregate par value of the outstanding preferred shares. Net current assets were defined as the excess of current assets over current liabilities, the latter including the amount of accrued dividends on preferred shares. The corporation had the option to redeem on any dividend date, the whole or any part of the so-called preferred shares, by paying therefor in cash, the sum of $105 a share and all accrued and unpaid dividends thereon to the date fixed for redemption.

No holders of so-called preferred shares were entitled, as a matter of right, to subscribe for or purchase shares of any other class, and no holder of such shares had any voting power or right to receive notice of any meeting of shareholders, unless dividends for four quarterly periods should have been unpaid, in which case, the holders of the preferred shares should be entitled to exercise the total and exclusive voting power of all of the corporation's shares.

Perhaps the most important of the provisions of the so-called preferred stock were as follows: "If any preferred shares shall be outstanding on July 1, 1949, the corporation shall and does hereby agree to redeem the same at their par value plus accrued dividends on the next succeeding dividend payment date and on such date the holders thereof, upon presentation and surrender of the certificates, shall be entitled to be paid the par value of such shares plus accrued dividends thereon."

In appealing from the determination of the district court that the "dividends" on the so-called preferred stock were to be treated as interest payments on indebtedness rather than as dividends on stock, the Government contends that the language of the certificates, referring to "dividends" and "preferred stock," discloses the intention to treat the recipients of the certificates as stockholders; that the understand-

ing between the corporation and the holders of the certificates—at the time they were issued—shows that the parties did not intend to treat the so-called preferred stock as a debt; that there was no maturity date for the certificates; that they represented no more than the issuance of stock; and that the payments made by the corporation to the certificate holders were merely dividends, and were not entitled to deduction from gross income for income tax purposes.

In the determination of the question before us, the cases agree that the decisive factor is not what the payments are called, but what in fact they are; and that if taken as a whole, the evidence shows a relation of debtor and creditor, the payments made on account of that relation, will be interest, no matter how called, while if taken as a whole, the evidence shows a stockholding relation, the payments made will be dividends, equally no matter how called. Commissioner of Internal Revenue v. J. N. Bray Co., 5 Cir., 126 F.2d 612; United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3. In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it. On this point, the designation of the instrument issued by the corporation, while not to be ignored, is not conclusive. The real intention of the parties is to be sought and, in order to establish it, evidence aliunde the contract is admissible. If the evidence establishes that the dividends paid are, according to the intent of the parties, in fact, interest, and the stock, on which the dividends are paid, is merely held by the creditor as security, it makes no difference what the reason was for paying it in that form [Commissioner of Internal Revenue v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792]; and one who executes an instrument which does not correctly describe the relation of the parties, may, as against the government, disclose the true relationship of debtor and creditor; and sums paid as interest, regardless of the name by which they are called, may be deducted by the taxpayer from its income. Arthur R. Jones Syndicate v. Commissioner of Internal Revenue, 7 Cir., 23 F.2d 833.

Payment of interest, in the form of dividends, does not change its character when it is shown that the reason for taking that form was for some reason personal to the parties concerned. Wiggin Terminals, Inc. v. United States, 1 Cir., 36 F.2d 893, 898. *The essential difference between a stockholder and a creditor is that the stockholder's intention is to embark upon the corporate adventure, taking the risks of loss attendant upon it, so that he may enjoy the chances of profit.* The creditor, on the other hand, does not intend to take such risks so far as they may be avoided, but merely to lend his capital to others who do intend to take them. Helvering v. Richmond F. & P. R. Co., 4 Cir., 90 F.2d 971. See Warren v. King, 108 U.S. 389, 399. It is to be observed that a creditor may, through the contract giving rise to the indebtedness, or some other contract affecting his status or governing his right, bind himself to give precedence to ordinary creditors. Commissioner of Internal Revenue v. O. P. P. Holding Corp., 2 Cir., 76 F.2d 11; Meridian & Thirteenth Realty Co. v. Commissioner of Internal Revenue, 44 B. T.A. 865. See In re Hicks-Fuller Co., 8 Cir., 9 F.2d 492.

Many cases relied upon by the Government, can be distinguished from the facts before us, on the ground that certificates in those instances were to be paid only from earnings; there was no fixed maturity date; the date of redemption was at the option of the corporation; or the certificates were convertible into common stock. Haffenreffer Brewing Co. v. Commissioner of Internal Revenue, 1 Cir., 116 F.2d 465; United States v. South Georgia Ry. Co., supra; Brown-Rogers-Dixson Co. v. Commissioner of Internal Revenue, 2 Cir., 122 F.2d 347; Finance & Investment Corp. v. Burnet, Commissioner, 61 App.D.C. 78, 57 F.2d 444; Commissioner of Internal Revenue v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611. A fixed maturity date has been held to be the most significant feature of the debtor-creditor relation. Haffenreffer Brewing Co. v. Commissioner of Internal Revenue, supra. See United States v. South Georgia Ry. Co., supra. In Elko Lamoille Power Co. v. Commissioner of Internal Revenue, 9 Cir., 50 F.2d 595, where the preferred stock could be redeemed at the option of the corporation within three years, it was held that there was no fixed obligation to redeem, and payments on the certificates were not in the nature of interest; and this case was distinguished from Arthur R. Jones Syndicate v. Commissioner of Internal Revenue, supra, where payments on so-called preferred stock were held to be interest payments, on the ground that in the latter case, there was an express provision to redeem

the preferred stock at the end of five years, and that it was, in effect, a bond payable at that time.

We pass to the consideration of cases sustaining the conclusion that payments on certain instruments, designated as stock certificates, are interest rather than dividends, and find that they are based largely on the ground that the certificates contain provisions of redemption at a fixed time.

In Commissioner of Internal Revenue v. Proctor Shop, Inc., supra, the facts were similar to those in the instant case, in that the corporation issued debenture preference stock, binding the company to pay cumulative interest at 6%, and to redeem the stock at a minimum of $1500 a month, commencing on a fixed date. It appeared that the certificate holder had been willing to lend his money to the corporation, but was not willing to accept stock because he desired to be assured that his advances would be repaid, and he also wanted a definite income from the funds. *In order to preserve the credit of the corporation,* preference "stock" was issued instead of bonds. Payments of the cumulative interest on the stock were held to partake of the nature of interest, rather than dividends, and were allowed as deductions in computing income tax. In Commissioner of Internal Revenue v. Palmer, Stacy-Merrill, Inc., 9 Cir., 111 F.2d 809, there was a similar arrangement, whereby a corporation agreed to pay 6% "dividends" on preferred stock, which the company bound itself to redeem, commencing on a date certain and continuing in twenty annual installments. On these facts, the dividends so paid were held deductible for income tax purposes, as payments on indebtedness.

In Commissioner of Internal Revenue v. J. N. Bray Co., supra, where debenture preferred stock certificates, having a definite maturity date and issued pursuant to a plan for a change of capital structure, expressly provided for payment of 8% per year interest on the certificates before payments of dividends, and for suit to enforce payment of principal and cumulative interest in event of default, it was held that such payments were not dividends on stock but were deductible as payments of interest, in determining the corporation's income tax. It was said that since the certificates had a definite maturity date, and the payments thereon were referred to as interest, and provision was made for suit to enforce payment of principal and cumulative interest in the event of default, such evidence, with

the facts and circumstances surrounding their issue, sustained the holding that they were interest payments.

In Commissioner of Internal Revenue v. O. P. P. Holding Corp., supra, where debenture bonds, bearing interest at 8% per annum, were issued by a corporation taxpayer, in part payment of the entire capital stock of another corporation, it was held that the payments on the so-called bonds were in the nature of interest and deductible for income tax purposes. The bonds had a definite maturity date; it was provided that the company might, at its option, suspend payment of interest, but that such a suspension should in no way relieve the corporation of the obligation to pay such interest at some future time; no dividends upon the stock could be paid until all interest on the so-called bonds should have been paid in full; and the holders of the bonds were subordinated, both as to principal and interest, to the claims of all other creditors. It was held that since the interest, even if deferred, could not be lost, even though the company had no earnings, inasmuch as it could be collected, together with the principal, on the redemption date, from the corpus of the debtor's property— regardless of whether there should be a surplus, such consideration marked the vital difference between a shareholder and a creditor; and that the payments on the certificates were interest on indebtedness.

In Meridian & Thirteenth Realty Co. v. Commissioner of Internal Revenue, supra, a corporation had issued 6% cumulative, non-voting, "preferred" stock, redeemable on fixed dates, with provisions that no dividends could be paid on the common stock until there had been set aside from the earnings of the current year an amount sufficient to meet the obligations on the so-called preferred stock for the next succeeding year. In its opinion, the Board remarked that the use of the words "preferred stock" and "dividends," as well as the subordination of the rights of the preferred stockholders to those of general creditors, were entitled to consideration in deciding whether payments on the certificates were dividends or interest; but that these circumstances did not serve to determine the issue. For, it was said, the preferred stock in that case had other and more significant characteristics; each share had a fixed maturity date upon which it became payable; a holder of a share of preferred stock could enforce payment of the entire sum due as a debt, in case of de-

fault; and the payment of the 6% was not dependent upon profits, but was payable and could be demanded in any event. Under these circumstances, the Board held that the so-called preferred stock represented an indebtedness and the "dividends" paid thereon were interest payments.

Kentucky River Coal Corp. v. Lucas, D. C., 51 F.2d 586 [affirmed 6 Cir., 63 F.2d 1007], may be distinguished from the case here on appeal. There, a corporation issued debenture stock, undertaking to redeem it ten years from date of issuance, and stipulating that no indebtedness could be incurred in excess of a stipulated amount while any of the debenture stock was outstanding. It was held that payments on such certificates were dividends and not deductible for income tax purposes. But it appeared that such debenture stock was listed in the articles of incorporation as part of the capital stock structure; it was also provided that a large portion of it was to be disposed of as treasury stock; and it was sold at 50% discount. Amounts received from its sale were set forth in income tax returns as invested capital; and it was so treated by the corporation in computing war profits credit and excess profits credit to which the company thereby became entitled. The fact that the corporation carried such stock on its records as part of the capital stock structure; that it treated it as capital stock in corporate reports, and as invested capital, in income tax returns; that it secured credit under the revenue statutes by virtue of treating it as invested capital—these circumstances may be said to have been controlling in the court's determination as to the intention of the parties, and that payments on such stock certificates were dividends rather than interest.

█ We are of the opinion that the conclusions of the district court that the preferred stock constituted indebtedness and that so-called dividends paid thereon were, in fact, interest payments, should be sustained. While the obligation was not to be carried as an indebtedness on the books of the company, the fair intendment of the agreement between the corporation and the certificate holders was that the preferred stock should, as between the parties, be a debt of the corporation, subordinated to general creditors, as in Commissioner of Internal Revenue v. O. P. P. Holding Corp., supra. There was a fixed redemption date; payments of 6% were cumulative and, in spite of current defaults, were to be paid, together with the face amount of the stock, on its maturity date; the preferred stock was not treated as invested capital; it was not sold with other stock; its holders had no voice in the corporate management; they did not assume the risks of the venture in order to share in the profits; and the certificates were not obtained in combination with voting stock. These facts serve to distinguish this case from Kentucky River Coal Corp. v. Lucas, supra, and render the payments more like interest on bonds than dividends on preferred stock.

█ It is contended by the Government that the taxpayer should have proved that the payments did not have to be made from earnings; and that appellee might have shown that they had not, in fact, been paid from earnings. If the question goes to the burden of proof, we do not know what the proof was in the district court, as none of the evidence was transmitted in the record on appeal; and if the contention be addressed to the findings of facts, such findings are presumptively correct, and in the absence of evidence to determine the correctness of the challenged findings, they cannot here be questioned. Sublett et al. v. Servel, Inc., 8 Cir., 124 F.2d 516. See Commissioner of Internal Revenue v. Proctor Shop, Inc., supra. In any event, the fact that the agreement provided for cumulative dividends to be paid, together with the face value of the stock, on a fixed date, is equivalent to a provision that such payments be made regardless of earnings.

The judgment of the district court is affirmed.

SIMONS, Circuit Judge (concurring).

Were the character of the so-called preferred shares in this cause to be determined solely by the terms of the instruments and admitted facts, I should be unable to agree that they represented a debt and not an interest in the capital assets of the taxpayer. This conclusion is based upon the apparently unequivocal refusal of the taxpayer to execute to its vendors a promissory note or definite obligation of like nature, on the ground that such obligation would have to be set up on the liability side of the taxpayer's balance sheet, and would affect its credit. Moreover, notwithstanding a fixed maturity date, which, while some evidence of a debt obligation is not conclusive, the instruments here involved contain no provision for the enforcement of dividend payments in case of default, except the cumulative provision,

leaving the inference clear that they were not intended to be otherwise enforced. Moreover, the dividends were not payable in any event, but only as and when declared. These are criteria of preferred stock rather than indicia of a debt obligation.

We have consistently held that while the designating of securities as preferred stock is not conclusive upon the status of the holder, yet what the parties in a given case have called the subject of the contract is of no little significance in determining their purpose, and where the purpose authorized and the purpose declared is the issue of stock and not the creation of a debt, the intention to create a debt should be clear and convincing. Hamlin v. Toledo S. L. & K. C. R. Co., 6 Cir., 78 F. 664, 36 L.R.A. 826; Matthews v. Bradford, 70 F.2d 77; Vanden Bosch v. Michigan Trust Co., 6 Cir., 35 F.2d 643; In re Phœnix Hotel Company of Lexington, D.C., 83 F.2d 724. The approach to related problems by the courts of ·Ohio has been similar. Miller, Executor, v. Ratterman, 47 Ohio St. 141, 24 N.E. 496.

The two cases cited by the appellee which come closest to the present controversy upon their facts, are easily distinguishable. In Arthur R. Jones Syndicate v. Com'r, 7 Cir., 23 F.2d 833, the necessities of a borrower led him to the door of the usurer who compelled him not only to pay an usurious rate of interest but required that he aid him to conceal the usury and avoid its consequences by denominating the evidence of indebtedness preferred stock. Clearly the actual situation there disclosed required the adjudication of the instruments as evidence of indebtedness. In Com'r v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792, there was a provision in the instruments that failure of the corporation for a period of two years to pay any quarterly interest, as the same became due and payable, entitled the owners thereof to declare the principal amount of the certificates due and to institute action for their par value and the accumulated interest. This provision was clearly incompatible with a holding that the obligations represented a stock interest rather than a debt..

We are, however, precluded from determining the meritorious question solely upon the terms of the so-called preferred shares. There was other evidence to show the intention of the parties, but it has not been brought to us for consideration. The trial court held the instruments to be evidence of a debt. Assuming this to be a finding of an ultimate fact in the determination of which we may exercise our own judgment, Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755; Bogardus v. Com'r, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, we are unable, in the absence of a complete record, to determine whether the inferences to be drawn from the terms of the instruments have or have not been successfully rebutted. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires that findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. In the absence of the evidence upon which the court made its findings we are unable to say that they were clearly wrong. Sublette et al. v. Servel, Inc., 8 Cir., 124 F.2d 516. I am therefore of the opinion that the judgment below should be affirmed.

ALLEN, Circuit Judge (dissenting).

I am unable to agree with the judgment of my colleagues for the reason (1) that the taxpayer has not sustained the burden of proof that amounts actually designated on its books as dividends and declared by it as dividends were in fact interest, and (2) that the conclusion reached by the majority appears to me to be based in effect on a premise that does not exist, namely, that the trial court found as a fact that the preferred stock issued to the Toledo Mortgage Company and to the Central Securities Corporation by the taxpayer was intended by the parties to be issued as evidence of a loan.

The burden is upon the taxpayer to establish its right to a deduction. Rugel v. Commissioner, 8 Cir., 127 F.2d 393; Rowan v. Commissioner, 5 Cir., 120 F.2d 515; Chicago & North Western Ry. Co. v. Commissioner, 7 Cir., 114 F.2d 882, certiorari denied 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128. The District Court seems to have misapplied the rule. In its opinion it states in effect that it was the Government's contention that payments for which deductions were claimed and which were made because of obligations under the preferred stock issue, were by way of dividends and therefore were not deductible. The court continues: "In my opinion the evidence does not support this contention." But the burden was not upon the Government to establish that the payments made were div-

idends. A prima facie case that they were dividends was established by the fact shown by the court's formal findings that the taxpayer denominated the payments as dividends on its books. The burden was upon the taxpayer to show that the payments actually were intended to constitute interest on a loan. This burden it did not sustain.

Upon the second point, the District Court made no finding as to the intention of the parties. Its findings as to what was done with reference to this question support the contention of the Government. While the opinion states that the evidence does not support the contention that the dividends declared on the stock were in fact dividends, the opinion makes no mention of the intention of the parties. It relies for the conclusion that the payments constitute interest upon the fact that the certificates matured in the year 1949, that the holders thereof were not entitled to participate in the management of the corporation and that the payments were cumulative. The court was in error with reference to the non-participation of the holders of preferred stock in the management, for in case dividends were unpaid for four quarterly periods, the contract specifically provided that the holders of the preferred shares should be entitled to exercise "the total and exclusive voting power of all the corporation's shares." The provision that the dividends should be cumulative is usual with reference to dividends on preferred stock, and implies that they were to be paid from earnings. A provision that payments be cumulative is never inserted with reference to interest payments, which are payable in any event.

The circumstance that the stock matures at a definite date has been held ·by this court not to be controlling. Kentucky River Coal Corp. v. Lucas, 6 Cir., 63 F.2d 1007, affirming D.C., 51 F.2d 586; Mathews v. Bradford, 6 Cir., 70 F.2d 77; Vanden Bosch v. Michigan Trust Co., 6 Cir., 35 F. 2d 643.

In the findings of fact the District Court includes no statement that the parties intended that this transaction should result in a loan. The finding that the officers of the Toledo Mortgage Company requested a note and that the taxpayer's president objected to such a method of payment for the reason that the company's obligation would be set up on the liability side of the company's balance sheet and that an agreement was finally reached as to the issue of the preferred stock protected, as set forth in the agreement, by a cumulative dividend provision, by a definite date of maturity, and by the right of total and exclusive voting power in case dividends were unpaid for a certain period, supports the conclusion that the parties intended to accept this particular stock not as a note, but as a capital investment.

In my judgment the opinion and the findings of fact demonstrate that the taxpayer did not sustain the burden of showing that these payments were regarded by the parties as interest upon a debt. The contention of the Government that the findings of fact do not support the court's conclusions of law should therefore be sustained.