CENTRAL RAILROAD COMPANY OF NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76493.  Promulgated February 17, 1937.

*Richard J. Lally, Esq.,* for the petitioner.
*E. C. Algire, Esq.,* and *Lloyd B. Harrison, Esq.,* for the respondent.

502

OPINION.

MURDOCK: The Commissioner did not allow, except in the case of the Newark Bay drawbridge and the signals and interlockers used in connection therewith, any deduction for depreciation of roadway, and the following roadway structures and machinery owned and used by the petitioner in its common carrier business:

| Account No. | Description | Account No. | Description |
| --- | --- | --- | --- |
| 6 | Bridges, trestles, and culverts. | 25 | Gas producing plants. |
| 15 | Crossings and signs. | 27 | Signals and interlockers. |
| 16 | Stations and office buildings. | 29 | Power plant buildings. |
| 17 | Roadway buildings. | 30 | Power substation buildings. |
| 18 | Water stations. | 35 | Miscellaneous structures. |
| 19 | Fuel stations. | 44 | Shop machinery. |
| 20 | Shops and engine houses. | 45 | Power plant machinery. |
| 23 | Wharves and docks. | 46 | Power substation apparatus. |
| 24 | Coal and ore wharves. | | |

Under the accounting regulations of the Interstate Commerce Commission, to which the petitioner is subject, the setting up of depreciation accounts on the books is permissive and not mandatory. Sec. 8, Classification of Operating Revenues and Operating Expenses of Steam Roads.[1] If the carrier has set up depreciation accounts on its books, then the cost of any properties retired and replaced, diminished by the amount of depreciation set up on the books with respect to the property retired, is charged to operating expenses (repair accounts) of the year in which the retirement is made; and if the properties are not replaced, that diminished cost is charged to profit and loss. Secs. 7 and 8, Classification of Investment in Road and Equipment of Steam Roads.[2] That is what is called in these proceedings the "depreciation method of accounting." On the other hand, if the carrier has not set up depreciation accounts on its books, then the cost of any properties retired and replaced, undiminished by depreciation sustained in prior accounting periods, is charged to operating expenses (repair accounts) of the year in which the retirement is made; and if the properties are not replaced, that undiminished cost is charged to profit and loss. This latter is here called the "retirement method of accounting." Under both methods, the costs of all renewals of the carrier's properties, when those renewals constitute less than the major portions of the values of the renewed properties, are charged to operating expenses.

---

[1] SEC. 8. *Depreciation of Fixed Improvements.*—Depreciation accounts, in which to include uniform monthly charges to cover the depreciation of fixed improvements, have been provided for the purpose of creating reserves which will meet or reduce the amounts otherwise chargeable, as may be appropriate, to operating expense or to profit and loss accounts to cover property retired. Such depreciation charges shall be based in each instance upon the percentage of the original cost (estimated if not known), ledger value, or purchase price of the property determined to be equitable by the carrier's experience and best sources of information as to the actual current loss from depreciation. A statement of the bases used by the carrier for computing these charges shall be included in its annual report to the Commission. Until further directed the use of depreciation accounts for fixed improvements is optional with the carrier.

[2] SEC. 7. *Property Retired and Replaced.*—When a unit of property other than land or equipment—such as a section of road, side or yard track, shop or power plant machine, building, or other structure—is retired from service and replaced with property of like purpose, the ledger value of the retired property shall be credited to the appropriate accounts of this classification at the time that the property is retired from service. The amount of this credit shall be charged concurrently as follows:

An amount equal to the credit balance in the accrued depreciation balance-sheet account with respect to the property thus retired shall be charged to that account and the remainder (less salvage and insurance recovered, if any), together with the cost of demolishing the property, if demolished for or by the carrier, shall be charged to the accounts in the Operating Expenses appropriate for the cost of repairs of the property before retirement. The accounting for the salvage shall be in accordance with the disposition made of the material recovered.

If, however, the property retired and replaced with property of like purpose is of minor importance, such as a small roadway building or other small structure, and is replaced in kind without betterment, the cost of the replacement shall be charged to operating expense accounts, and no adjustment made in the road and equipment accounts. * * *

When the renewals to be made to an important building or other structure will constitute the major portion of its value when renewed, the property, when taken out of service, shall be considered as retired and accounted for as provided above, and for the pur-

The petitioner employed the retirement method of accounting in keeping its books of account, at least from 1913 until after 1930.[3] Taxable net income was computed by that method in all of the petitioner's returns for that period and also for the year 1931. Those returns, so far as the method of computing net income is concerned, were accepted and approved by the respondent. The petitioner has never sought nor obtained permission to compute its net income in any other way. Cf. *Mount Vernon Trust Co.* v. *Commissioner*, 75 Fed. (2d) 938; *Brown* v. *Helvering*, 291 U. S. 193.

The petitioner now claims the right to compute net income for 1930 by applying the depreciation method of accounting to all additions since 1913 to the particular accounts listed above. Its claim is based upon the grounds that all of its roadway structures and machinery have limited useful service lives, regardless of any and all expenditures made to maintain them in an efficient operating condition; the applicable taxing statute provides for the deduction from income of a reasonable allowance for depreciation of property used in its business; and, therefore, it is entitled, irrespective of what has been its consistent accounting practice in the matter of depreciation, to an annual deduction for depreciation in respect of the structures and machinery. The respondent's position is that the petitioner has regularly employed the retirement method of accounting in keeping its books of account; the retirement method clearly reflects the petitioner's net income and has been followed and accepted in computing taxable net income in returns for all of the years 1913 to 1930, inclusive, and thereafter; double deductions will result in this year if the petitioner's contention is allowed; the petitioner may not now change its method of accounting for 1930, without first obtaining permission to do so, which permission has neither been

---

poses of this classification the renewed property shall be considered as an addition, and the appraised cost thereof shall be included in the accounts of this classification, consideration being given to the secondhand portions remaining therein. In no case shall the charge for the renewed property exceed the cost (at current market prices of labor and material) of new property of equal capacity and equal expectation of life in service, less a suitable allowance on account of the secondhand parts remaining therein.

Sec. 8. *Property Retired and Not Replaced.*—When a unit of property other than land or equipment—such as a section of road, side or yard track, shop or power plant machine, building, or other structure—is retired from service and not replaced, the ledger value shall be credited to the appropriate property accounts at the time that the property is retired from service. The amount of this credit shall be concurrently charged as follows:

An amount equal to the credit balance in the accrued depreciation balance-sheet account with respect to the property thus retired shall be charged to that account, and the remainder (less salvage and insurance recovered, if any), together with the cost of demolishing the property if demolished by or for the account of the carrier, shall be charged to the appropriate profit and loss account. The accounting for the salvage shall be in accordance with the disposition made of the material recovered.

[3] The lone exception to that was in the case of the Newark Bay drawbridge and the signals and interlockers used in connection therewith. That facility was completed in 1927, and, beginning in 1928 and for a period of five years, depreciation thereof was accounted for on the books and in the annual reports to the Interstate Commerce Commission.

sought nor granted; and, in any event, the charges to operating expenses for maintenance more than offset any depreciation of the structures and machinery carried in its road accounts.

The petitioner introduced a great amount of documentary and oral evidence in an effort to establish the depreciation bases of all structures and machinery acquired after February 28, 1913, and the useful service lives of those facilities. However, detailed findings as to these bases and service lives have not been made, since they would be immaterial to the disposition of the case. Assuming for the moment, without deciding, that the depreciation method is a more acceptable. method of computing net income than the retirement method, if uniformly applied to all roadway property accounts, there is no proof that the resulting net income would be different from that determined by the respondent. The petitioner did not carry its proof that far and all signs point to its inability to do so. However, the decision need not rest entirely upon that insufficiency of proof. The petitioner's claim will be considered upon its merits.

On the legal question, as to how taxable net income is to be computed, section 41 of the Revenue Act of 1928 [4] is controlling. It requires that net income be computed in accordance with the method of accounting regularly employed in keeping the taxpayer's books of account. However, the respondent is given discretionary power to determine the effectiveness of the taxpayer's method of accounting for use in computing taxable net income, and, if the method does not clearly reflect the income, the statute directs him to make the computation by such method as in his opinion does clearly reflect the income.

In the instant case, the respondent has determined that the petitioner's accounting method meets the statutory test of a clear reflection of income, and, except in respects not important here, he has accepted and approved the 1930 return, in which the net income was computed by that method. That determination is prima facie correct. Moreover, it has the virtue of being consistent with the respondent's action over a period of more than seventeen years, dating back to the inception of the income tax; it conforms with what, apparently, has always been the petitioner's accounting practice; it is a practical recognition of and gives effect to the rules and regulations

---

[4] SEC. 41. *General Rule.*—The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

of a coordinate branch of the Government, which is charged by law with the duty of prescribing accounting regulations for the railroad industry, or so much of it as is engaged in interstate commerce; and it conforms with what is the almost universal accounting practice of railroads within the jurisdiction of the Interstate Commerce Commission. Consequently, before any change in the petitioner's long established accounting practice, for the purpose of computing the taxable net income for 1930, would be required or even permitted, most compelling reasons should appear.

The petitioner contends, in substance, that its method of accounting does not clearly reflect net income, because (1) there is not an annual accounting for the depreciation of its roadway properties sustained within the year, and (2) such depreciation is not recognized and accounted for until the year of the retirement of the property from use, when its original cost is charged against operating expenses, the effect of which is to burden the earnings of that year with depreciation losses sustained in prior years. The statute permits, as annual deductions from income, reasonable allowances for the exhaustion, wear, and tear of property used in the trade or business, including reasonable allowances for obsolescence, sec. 23(k), Revenue Act of 1928;[5] and losses sustained upon the sale or other disposition of property must be diminished by depreciation deductions allowable for prior years, sec. 111(b)(2), Revenue Act of 1928.[6] The taxpayer has deducted amounts from its income on a theory different from that of depreciation but calculated to produce the same result in the end, to wit, the restoration of capital from earnings before the remaining earnings are taxed. The case must

---

[5] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*       *       *       *       *       *       *

(k) *Depreciation.*—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

[6] SEC. III. DETERMINATION OF AMOUNT OF GAIN OR LOSS.

*       *       *       *       *       *       *

(b) *Adjustment of basis.*—In computing the amount of gain or loss under subsection (a)—

*       *       *       *       *       *       *

(2) The basis shall be diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion which have since the acquisition of the property been allowable in respect of such property under this Act or prior income tax laws; but in no case shall the amount of the diminution in respect of depletion exceed a depletion deduction computed without reference to discovery value under section 114 (b) (2) or to percentage depletion under section 114 (b) (3). In addition, if the property was acquired before March 1, 1913, the basis (if other than the fair market value as of March 1, 1913) shall be diminished in the amount of exhaustion, wear and tear, obsolescence, and depletion actually sustained before such date, and *  *  *.

turn upon whether or not the method used by the petitioner and approved by the Commissioner clearly reflects income.

That individual units of roadway property do depreciate in useful and serviceable value, despite the maintenance performed to keep them in an efficient operating condition, seems too obvious to need any extended discussion. After all, the properties are made of destructible materials; and nothing wrought by the hand of man is immortal. The inevitable consequences of exposure to the elements, the effect of wear and tear occasioned by usage, the growing inadequacy of facilities to cope with the needs of an ever expanding business, and the normal progress and advancements made in the improvement of transportation, all indicate a limited physical and economic life for the properties. That this depreciation does take place has been recognized by the respondent, and we do not understand that he denies it here. See Bulletin "F" (Revised January 1931), Income Tax Depreciation and Obsolescence, Revenue Act of 1928. It has also been recognized by the Interstate Commerce Commission, and the accounting for it is a matter that has engaged the attention of the Commission from time to time over a long period of years. See Interstate Commerce Commission Order No. 15100, Depreciation Charges of Steam Railroad Companies, 177 I. C. C. 351. There is adequate evidence that the petitioner's roadway properties are not immune to this depreciation.

However, the petitioner, if its contention in regard to depreciation were granted, would receive the benefits not only of the depreciation method of accounting, but also of the retirement method of accounting. It has already reduced its income by charging to operating expenses amounts expended in restoring its properties and in making good depreciation which would not be deductible from income had it used the depreciation method of accounting (sec. 24 (a) (3), Revenue Act of 1928) and, further, it has reduced its income by retirement losses which represent depreciation sustained in prior accounting periods. These items can not now be isolated or eliminated. They are unidentifiable and indeterminate in amount so far as this record is concerned, yet they are undoubtedly substantial. Therefore, double deductions in respect of the same losses would result by the allowance now of deductions for depreciation. Cf. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. A method of accounting allowing such double deductions would not clearly and correctly reflect taxable net income. The method used by the taxpayer in keeping its books and in reporting its income more clearly reflects its net income than the one which it now seeks to use as a substitute.

There is little about the method which the petitioner now suggests as a basis for computing 1930 net income that merits any very serious consideration as a better method than the one it has used over a long

period of years. It is not available for uniform application to all of the petitioner's roadway property accounts, because of lack of historical and accounting data, and, in these proceedings, the petitioner, with knowledge of that fact, has not attempted to so apply it. It is a hybrid combination of both the depreciation method and the retirement method of accounting. Under it, the petitioner would continue its present accounting practice with respect to all properties acquired before March 1, 1913, which represent by far the major part of its investment in roadway properties, and make the change to the depreciation method only with respect to the properties acquired after that date. Such a hybrid method is wholly incapable of a clear reflection of net income. Either the one or the other of the depreciation and retirement methods should be uniformly applied to all of the roadway property accounts. That is what has been done under the petitioner's established accounting method. To this further extent, also, that method more clearly reflects the petitioner's net income than the one which it now seeks to substitute for it.

*Decision will be entered for the respondent.*