CHICAGO & N. W. R. CO. et al. v. COMMIS-SIONER OF INTERNAL REVENUE.

No. 7155.

Circuit Court of Appeals, Seventh Circuit.

July 12, 1940.

Rehearing Denied Oct. 18, 1940.

Nelson Trottman, of Chicago, Ill. (W. T. Faricy, of Chicago, Ill., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and John W. Jones, Sp. Assts. to Atty. Gen., and J. P. Wenchel and John W. Smith, both of Washington, D. C., for respondent.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

The Chicago and North Western Railway Company and Charles M. Thomson, trustee, seek a review of a decision of the United States Board of Tax Appeals denying petitioners' requested re-determination of an income tax deficiency for the years 1927 and 1928.

Petitioners contend that the amount of the deficiency, as determined by respondent, Commissioner, is incorrect for the reason that the Commissioner employed a method of computing the allowance for depreciation which is unlawful and unauthorized by the Revenue Act.

It appears from the record that the Commissioner used the "retirement" method of computing the depreciation allowance, and petitioner contends that as a matter of law it was entitled to have the depreciation allowance computed by the "straight line" method. The controversy is limited to the depreciation allowance in respect to certain structures owned by the petitioner consisting of five grain elevators, three coal docks, and a building in which its general offices are located.

■ The method of accounting which is employed by a taxpayer must "clearly reflect the income" of the taxpayer. Since a taxpayer is authorized to deduct "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence," any method of accounting which produces a sum which fairly can be said to be "a reasonable allowance" gives effect to the statutory requirement that the method of accounting of the taxpayer must clearly reflect income, that is, to the extent that the depreciation allowance enters into the determination of income.[1]

The method of accounting for depreciation of property which generally is used for purposes of the Revenue Act is the so-called "straight line" method. This method of accounting indicates depreciation of property by setting up accounts for exhaustion, wear and tear, and obsolescence; and under this method an amount representing a fixed annual depreciation is computed and allowed as a deduction. The railroads, however, consistently have refused to adopt the foregoing method of accounting and have used the "retirement" method both in reports to the Interstate Commerce Commission and in returns for tax purposes. This method is standard and customary among railroad companies; and under such method the taxpayer is permitted to reduce its income by the amount expended for repairs, replacements and renewals, and by the cost of discarded items; and if such amount exceeds 50% of the value of any item of property as restored, such item is treated as "retired" and the original cost of such "retired" item is allowed as a deduction, undiminished by any charge for depreciation sustained in prior accounting periods. It has been assumed by the railroads that certain benefits are obtained by the use of the "retirement" method, such as the maintenance of a higher capitalization as a rate base factor, larger income by reason of the higher rate base factor, and availability of a larger per cent of the income by reason of the fact that no accounts are required to be set up for depreciation. Whether such assumed advantages in fact exist, petitioner used the "retirement" method of accounting prior to, during, and subsequently to the taxable years in question.

Petitioner's method of accounting was approved by the Treasury Department, and a long established regulation requires that a taxpayer, who desires to change his method of accounting, must first obtain permission from the Commissioner.[2] No application has been filed by petitioner for authority to change its method of accounting; but petitioner contends that it has an absolute right under the Revenue Act to a deduction computed in accordance with the "straight line" depreciation method, and that the Commissioner was unauthorized

---

[1] Section 23 (k), Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A.Int.Rev. Code, § 23(*l*), Sec. 234 (a) (7), Rev.Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 187.

[2] Treasury Regulation No. 69, Art. 23, promulgated under the Revenue Act of 1926 provides that "Application for per-

mission to change the basis of the return shall be made at least 30 days before the close of the period to be covered by the return and shall be accompanied by a statement specifying the classes of items differently treated under the two systems and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change."

to permit deduction by the "retirement" method. It follows from the foregoing, so petitioner argues, that respondent could not require petitioner to use, or to apply for permission to change from, an unauthorized and invalid method of accounting.

Is the "retirement" method of computing depreciation invalid and is the "straight line" method the exclusively authorized method?

The Revenue Act does not provide, in terms, for any particular method of accounting for the purpose of determining the amount of deduction for depreciation. The statute merely provides that a deduction will be allowed in the amount of "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." It is clear that the intent of the Act is satisfied by any method of accounting which will enable the taxpayer to arrive at "a reasonable allowance" for depreciation. The standard fixed by the Act is satisfied by reasonable business certainty and does not require the taxpayer to devise a system of accounting which will purport to reflect the amount of dollars worth of depreciation with absolute certainty. Regulations promulgated by the Treasury Department are in harmony with the spirit and purpose of the statute. These regulations have encouraged the taxpayer to use his own accounting system which may be peculiarly adapted to his own business. Regulations were promulgated both under the Act of 1926 and the Act of 1928 which provided that deductions for depreciation must not be disallowed unless shown by clear and convincing evidence to be unreasonable; and the regulations further provided that "the capital sum to be replaced should be charged off over the useful life of the property either in equal annual installments or *in accordance with any other recognized trade practice,* such as an apportionment of the capital sum over units of production." (Our italics.) The foregoing authorized the "straight line" method or any other method recognized by trade practice.[3]

The Commissioner of Internal Revenue has a wide discretion in determining whether to approve a taxpayer's method of accounting or whether to require another method. Within the general standard that the method of accounting "clearly reflect the income" the Commissioner's decision is final; and any method of accounting which clearly reflects "a reasonable allowance" for depreciation necessarily, by force of the language of the Act itself, "clearly reflects the income," since it eliminates names from the general receipts of the taxpayer an amount which represents restoration of capital from earnings which must be eliminated before there is true income.

How wide the discretion of the Commissioner is under the Revenue Acts is indicated by the comments of the Supreme Court in Brown v. Helvering.[4] In the course of the opinion the Supreme Court pointed out that the method employed by a taxpayer is never conclusive; and that "if in the opinion of the Commissioner it does not clearly reflect the income, 'the computation shall be made upon such basis and in such manner' as will, in his opinion, do so." It was further stated that in assessing the deficiencies, "the Commissioner required in effect that the taxpayer continue to follow the method of accounting which had been in use prior to the change made in 1923"; and that "to so require was within his administrative discretion." The Court referred to the Commissioner's "wide discretion in deciding whether to permit or to forbid a change"; and stated that "it is not the province of the court to weigh and determine the relative merits of systems of accounting."

Unless we can say that the Commissioner abused his discretion in approving the retirement method of accounting for the purpose of determining "a reasonable allowance" for depreciation we must hold that such method of accounting was authorized by the Revenue Act. To determine that question we shall examine somewhat more in detail the "retirement" method of accounting as applied to petitioner's property. As already stated, it is the approved standard method of accounting of railroad companies and is a recognized trade practice in petitioner's trade. Under this method of accounting all the assets owned by a railroad company are treated as a unit. The railroads have contended that the nature of the depreciation problem for railroads is affected by the fact that a railroad com-

---

[3] Treasury Regulation 69, Art. 165, promulgated under the Revenue Act of 1926, Regulation 74, Art. 165, promulgated under the Revenue Act of 1928.

[4] 291 U.S. 193, 203, 204, 54 S.Ct. 356, 360, 78 L.Ed. 725.

pany owns hundreds of millions of dollars worth of miscellaneous property, most of which requires a systematic and continuous making of repairs, renewals and replacements, with the result that the property, as a whole, is considered as valuable at the end of the year as at the beginning. It is essential to the proper functioning of a great railway system that its property not depreciate in the sense of deteriorate. It is assumed that the privilege of charging to expense and deducting in the annual income tax return any expenditures for repair or renewal in an amount less than 50% of the value of the item, and the privilege of deducting the full original cost of any item which has been "retired" by reason of the fact that the expenditure in connection therewith has exceeded 50% of its value, would approximate, on the average, the annual depreciation allowance under the "straight line" method, or under any other recognized trade practice. Under such accounting method a railroad would enjoy an apparent advantage upon the "retirement" of a large, valuable structure in any particular taxable year, but this apparent advantage was supposed to be compensated for by a "law of averages", which seems to be especially applicable to the large and varied holdings of a railroad company in respect to which the maintenance and retirement problem would be fairly constant and uniform and continue over an indefinite period of time.

The justification for the practice is summed up by the Circuit Court of Appeals for the Fourth Circuit as follows: "It would be inconvenient, if not impractical, in railroad accounting to charge every item having a life of more than one year to capital account and allow depreciation on it as a deductible item of expense; and in a great business where thousands of similar replacement or repair items are involved nothing would be gained by such a system of accounting, since, on the law of averages, expenditures for such items during a given year would substantially balance the depreciation for that year.[5]

■ Petitioner urges the significance of the fact that the items of property involved are non-carrier property, although petitioner consistently carried the property in question in an account designated "investment in road and equipment." The retirement system of accounting, however, is not based upon a classification of property owned by a railroad company. Its accounting theory of equalization through the law of averages is based upon the treatment of all the property assets of a railroad as a composite unit. Petitioner and other railroads have so treated their assets, and have enjoyed the privilege of using a special method of accounting on the assumption that when such method is applied to the taxpayer's holdings as a unit it will reflect "a reasonable allowance" for depreciation, and that such allowance will approximate the result arrived at by the usual depreciation method. The taxpayer having elected through a long period of years, including the taxable years in question, to employ the retirement method for all of its property treated as a unit, cannot now claim as a matter of right the privilege of retroactively applying a different method of accounting for depreciation in respect to certain items of property for certain taxable years.

In respect to the foregoing point the discussion and decision of the United States Board of Tax Appeals in Central Railroad Company of New Jersey v. Commissioner of Internal Revenue [6] is pertinent. In that case a railroad had consistently employed the retirement method of accounting until after the taxable year of 1930. The railroad's taxable net income had been computed by that method in all of the petitioner's returns for the period from 1913 to and including 1931. Petitioner had not sought nor obtained permission to compute its net income in any other way. The following comment of the Board of Tax Appeals discloses the unsoundness of allowing a retroactive change of method of accounting:

"However, the petitioner, if its contention in regard to depreciation were granted, would receive the benefits not only of the depreciation method of accounting, but also of the retirement method of accounting. It has already reduced its income by charging to operating expense amounts expended in restoring its properties and in making good depreciation which would not be deductible from income had it used the depreciation method of accounting (sec. 24 (a) (3), Revenue Act of 1928 [26 U.S.C.A. Int.Rev. Code § 24 (a) (3)]) and, further, it has reduced its income by retirement losses which represent depreciation sustained in

---

[5] Southern Ry. Co. v. Commissioner, 4 Cir., 74 F.2d 887, 890.

[6] 35 B.T.A. 501, 507.

prior accounting periods. These items can not now be isolated or eliminated. They are unidentifiable and indeterminate in amount so far as this record is concerned, yet they are undoubtedly substantial. Therefore, double deductions in respect of the same losses would result by the allowance now of deductions for depreciation. Cf. Ilfeld Co. v. Hernandez, 292 U.S. 62 [54 S.Ct. 596, 78 L.Ed. 1127]. A method of accounting allowing such double deductions would not clearly and correctly reflect taxable net income. The method used by the taxpayer in keeping its books and in reporting its income more clearly reflects its net income than the one which it now seeks to use as a substitute."

Petitioner urges that United States v. Ludey[7] is authority for "the rule that upon the sale or other disposition of a capital asset the 'basis' for determining gain or loss *must* be reduced by past accrued depreciation, even where the taxpayer has not taken depreciation deductions currently." As we read the opinion in that case, the Supreme Court reversed a decision of the Court of Claims, 61 Ct.Cl. 126, for the reason that to permit a taxpayer to deduct annual depreciation charges from gross income to determine the taxable income of the tax year, and then to permit him to compute loss on a sale on the basis of the undiminished original cost of the asset, would amount to permitting a double deduction for the loss of the same capital asset. The decision does not pass upon the validity of different methods of determining a "reasonable allowance" for depreciation. The substance of the decision is that Congress did not intend a double deduction for depreciation.

█ We find nothing in the record to justify a holding that the Commissioner acted unreasonably in deciding that the retirement method of computing depreciation would result in "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." Consequently, we hold that the retirement method of accounting is permissible under the Revenue Act for the purpose of determining the amount of deduction for depreciation in the case of railroads. Also, we are of the opinion that the regulation requiring a taxpayer to make application to the Commissioner for permission to change the method of accounting is a reasonable regulation. But apart from such regulation we hold that it was no abuse of discretion for the Commissioner to refuse to permit a retroactive change of method of accounting for the taxable years of 1927 and 1928 in respect to a few items of petitioner's property.

A second question presented by petitioner rests upon a claim for a deduction of the value of a strip of land which was conveyed by the petitioner to the municipality of Sioux City. The strip of land is on the bank of the Missouri River and is situated between petitioner's right-of-way and the river. It was conveyed for the purpose of being used as a part of a proposed public street, and no cash or property consideration was given to petitioner. In the conveyance petitioner reserved all riparian rights and the right to construct railway tracks across the street. The conveyance provided for reversion of the land to the petitioner if the grantor should cease to use the land as a street; also the conveyance provided that no assessments were to be levied upon petitioner for the construction of the street. The Board concluded that the conveyance resulted in a permanent protection of petitioner's adjacent property against the danger of flood and at the same time provided greater accessibility to city streets and a decrease in the cost of crossing protection. In view of the foregoing facts the Board was of the opinion that the petitioner received a general benefit analogous to that of the capital investment and concluded that there was no statutory basis for the allowance as a deduction of the full market value of the strip of land.

█ One seeking a deduction must bring his claim within the terms of a specific statutory provision. The decisions of the Supreme Court frequently have stated that deductions are matters of legislative grace and that the burden is upon the taxpayer to establish the right to the claimed deduction. Petitioner cites and relies upon the case of Old Mission Portland Cement Co. v. Commissioner decided by the Circuit Court of Appeals for the Ninth Circuit.[8] The Court of Appeals held that a contribution of $2,500 to the Y. M. C. A. of San Francisco toward its building should be treated as an ordinary and necessary business expense and therefore deductible. The

---

[7] 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054.

[8] 69 F.2d 676, 681.

contribution was made "with the understanding that so far as the cement supplied in the building concrete construction work was concerned, the petitioner would receive its share on the proportional basis of its donation, * * *." The Court of Appeals considered the Y. M. C. A. contribution a proper deduction for the reason that it constituted an ordinary and necessary business expense for a benefit flowing directly to the company as an incident to its business.

■ Corporations are not entitled to deductions for charitable contributions, but under a Treasury Regulation they are authorized to take deductions for "donations which legitimately represent a consideration for a benefit flowing directly to the corporation as an incident of its business * * *." [9] Such contributions, as indicated in the opinion in Old Mission Portland Cement Co. v. Com'r, are deductible if they can be treated as ordinary and necessary business expenses. In that case, and in the cases in which such contributions have been held to be deductible, the contribution had decreased the assets of the donor for the purpose, or at least in the hope, of obtaining a direct benefit to the corporation as an incident of its business.

■ In this case the Board of Tax Appeals concluded that the conveyance "resulted in no expansion to the petitioner of its annual income"; that "it was not the occasion for yielding to the petitioner new traffic"; that "its beneficial effect to the petitioner was analogous to that of a capital investment because, as shown by the evidence, it resulted in a permanent protection of the petitioner's nearby property against the dangers of flood, greater accessibility to city streets, and a diminution in the possible cost of crossing protection."

We are of the opinion that the Board of Tax Appeals correctly concluded that "the regulations do not permit the deduction of what are essentially capital investments merely because in some way or another the conveying taxpayer can be said to derive a benefit from the conveyance."

A third question is presented by petitioner's claim of right to deduct from its own deficiency an alleged overassessment against one of several affiliated corporations.

■ Of the affiliated corporations only the petitioner and Superior Coal Company had net incomes for the years in question. Consequently, the deficiency, as finally determined by the Commissioner, was allocated, as required by the Revenue Act, to these two corporations, upon the ratio that their respective incomes bore to the affiliated group income. A separate deficiency letter was sent to each company, and the petition of taxpayer complained only of the assessment against the petitioner. The affiliate, Superior Coal Company, was not a party to the proceedings before the Board and is not a party to the instant proceeding before this Court. In short, the proceeding as initiated and carried on by petitioner recognized that petitioner and its affiliate were separate taxpayers with separate liabilities. This is consistent with the decisions which hold that a group of affiliates is merely a tax computing unit and not a taxpayer.[10]

During the hearing on the computation of the tax, petitioner filed a motion for a rehearing before the Board, in which motion it requested leave to amend its petition for redetermination of its deficiency by inserting a new paragraph which would allege that the Commissioner erred in making any allocation of tax for the years 1927 and 1928 against Superior Coal Company, and which would allege that there was an agreement between the affiliated corporations that any income tax against them should be assessed to petitioner. And as a part of its tender the petitioner stated that it would offer "witnesses who would testify that in fact there was an agreement between these parties, though informal, to have the entire tax assessed against the parent corporation."

■ The petitioner contends that the Board abused its discretion by refusing to allow the motion, permit the amendment, and hear testimony in support of the averments.

The requested procedure was highly irregular. If the agreement actually existed it was a fact which should have been made known to the Commissioner prior to the time that he assessed separate deficiencies against the petitioner and the Coal Company, which was done on the assumption that no such agreement existed. The Com-

---

[9] Regulation 74, Art. 262. Promulgated under the Revenue Act of 1928.
[10] Helvering v. Morgan's, Inc., 293 U.

S. 121, 55 S.Ct. 60, 79 L.Ed. 232; Commissioner v. Trustees of Lumber Investment Association, 7 Cir., 100 F.2d 18.

missioner was not apprised of any facts to indicate the existence of an agreement, although, if the agreement did exist, such fact necessarily was known to the petitioner and the subsidiaries; and if the petitioner wished to gain any advantage from the existence of an agreement, it owed a duty to the Commissioner to disclose the existence of the agreement.

Throughout the proceedings and until announcement of the finding and opinion of the Board petitioner raised no question about the propriety of the Commissioner's assessing it on the basis of the non-existence of an agreement between it and its affiliates. It appealed to the Board only from the assessment against it. Thereafter, for the first time, petitioner sought to gain a benefit based on the claimed existence of such an agreement. The proposed amendment of the petition was inconsistent with the theory of the proceedings before the Board, presenting a wholly new issue, and sought to introduce a new ground of appeal in respect to a deficiency which had not been determined by the Commissioner. As already suggested, the claimed justification for the granting of the motion for a rehearing and the relief incident thereto was the existence of a fact which was known to the petitioner at all times, and no reason for the unusual delay in urging the existence of such fact was offered to the Board by the petitioner.

Petitioner urges the injustice of its not being permitted to offset against its deficiency the amount of the over-assessment of the Superior Coal Company. Under the law, however, such situation need not have existed. The Superior Coal Company was entitled to recoup the overassessment and if the petitioner was entitled, as between it and the Superior Coal Company, to have the benefit of the over-assessment, it could have obtained this benefit through timely action by the Coal Company.

Petitioner by its proffer of proof of agreement offered to prove by parol evidence that there was an understanding among the affiliates that the petitioner would pay the entire tax. There was no offer to prove the existence of a signed written agreement, and we are of the opinion that the proffered testimony would not establish an agreement cognizable by the Board under the Revenue Act. But granting that it was sufficient, the facts made a very weak case for favorable exercise of discretion by the Board.

We conclude that the Board did not abuse its discretion in denying petitioner's motion for a rehearing; and since we find no error in the decision of the Board of Tax Appeals the same is affirmed.