## ST. PAUL UNION DEPOT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11972.

Circuit Court of Appeals, Eighth Circuit.
Nov. 21, 1941.

236

Arthur C. Erdall, of Minneapolis, Minn., for petitioner.

Berryman Green, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Helen R. Carloss and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN and JOHNSEN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

This petition for review presents the question of the right of the petitioner, in computing its taxable income for the years 1934 and 1935, to deduct a reasonable allowance for the depreciation of the head-house and concourse of the St. Paul Union Depot, which it owns and operates in connection with its other terminal facilities in St. Paul, Minnesota. The respondent determined that the petitioner was not entitled to deduct such depreciation in computing its income for those years, (1) because the petitioner had prior to 1935 used the retirement method of accounting and had in prior years computed its income in accordance with that method and had not obtained permission from the respondent to compute its income on any other basis, and (2) because the petitioner's stockholding tenants had agreed to preserve and renew all of the petitioner's terminal facilities, including its depot, and would therefore absorb depreciation. On review, the Board of Tax Appeals affirmed the determination of the respondent upon the ground that the petitioner, during all of the years prior to 1935, had consistently kept its accounts and made its income tax returns upon the retirement method of accounting, and that, without the consent of the respondent, it had for the year 1935 changed its accounting method and had computed its income tax liability in accordance with the changed method.

The facts are virtually undisputed and may be summarized as follows:

The petitioner is a Minnesota corporation which has for many years furnished depot and terminal facilities for the railroads entering St. Paul, Minnesota. A depot built by the petitioner in 1880 burned in 1884, and was replaced by another depot, which burned in 1913. The present depot was built during the years 1917 to 1925. The head-house and concourse— which for brevity we shall call "the depot" —cost $2,735,212.06 and were mainly constructed of stone, concrete and brick. The petitioner owns no other comparable structure, and the cost of the depot represents about one-third of the cost of all of its properties subject to depreciation. The total cost of the petitioner's terminal facilities amounts to $15,575,805. From 1925 to 1935 there was a large decrease in the railroad passenger business in St. Paul, and the depot has turned out to be much larger than necessary. It had by 1935 become to a substantial degree outmoded.

The building of the depot and the enlargement of the petitioner's terminal facilities after the burning of the former depot in 1913 was financed by the nine railroad companies which owned all of the petitioner's capital stock, and which companies in December, 1918, entered into an operating agreement with the petitioner, by the terms of which they assumed its bonded indebtedness with respect to both principal and interest, and leased its facilities for 99 years. Under this agreement (as supplemented in 1918 and 1923), the stockholding tenant railroads agreed to pay,

as rentals all of the petitioner's fixed charges, all expenses of maintaining, repairing and operating its terminal facilities, "and all such other expenses and liabilities as may be incurred in the preservation and management of said property and the business thereof" and "all expenses of maintenance, repairs and renewals of the facilities."

The method of accounting used by the petitioner has necessarily been that prescribed by the Interstate Commerce Commission. Under this method the petitioner has carried the cost of its depot and other properties in its investment account. All expenditures for maintenance, repairs or replacements of less than 50% of the value of any property replaced were charged to operating expense. If the replacements of trackage or other property exceeded 50% of the value of the property retired, they were capitalized and the original cost of the property replaced was charged off the investment account and charged to expense or to profit and loss, as required by the rules of the Interstate Commerce Commission. Up to and including the taxable years in suit, the petitioner made no replacements to its depot, and the expense of making necessary repairs was charged to operation. All items charged to expense were consistently deducted as current expenses in computing income tax liability.

The cost of the two old depots which had been destroyed, amounting to more than $600,000, had been capitalized upon the petitioner's books, but was not charged off its investment account until 1924, when it was set up in expense account in substantial accordance with the petitioner's method of accounting. During the years 1924 and 1926, the stockholding tenants paid the cost of the old depots to the petitioner. This was apparently done to insure adequate financing of the new depot and the enlarged terminal facilities. In its tax return for 1924 petitioner made no claim for a deduction of the cost of the old depots. The tenant lines have not reimbursed the petitioner for depreciation on its present depot, and have not expressly agreed, either in the form of rent or otherwise, to reimburse the petitioner for such depreciation.

The petitioner has always kept its books upon an accrual basis. Until it filed its income tax return for the year 1935 it had made its returns in strict accordance with the retirement method of accounting and had never claimed any deduction for annual depreciation of its depot. In 1935, for the first time, the petitioner set up on its books a reserve for depreciation of its depot, showing the annual depreciation to be one per cent of its cost, or $27,352.12. The petitioner did not at any time apply to the respondent for permission to change its accounting method or its basis for computing income on its depot. In computing its income tax for the year 1935, the petitioner took a deduction for depreciation on its depot of $27,352.12. It also filed a claim for the refund of income taxes paid in 1934, on the ground that it was entitled to a like deduction for that year. The respondent disallowed the deductions claimed, and determined deficiencies for each of the years.[1]

On review, the Board ruled that the petitioner, having neither applied for nor obtained the consent of the respondent to compute its income, for purposes of taxation, upon any other accounting method than that which it had used prior to 1935,

---

[1] The reasons given by the respondent for denying the petitioner's claims for deductions were:

"The data record discloses that you have been employing the retirement method of accounting in keeping your books, that your taxable income has been computed in your returns consistent with that method since the structures in question were completed and that no permission has ever been applied for nor obtained to compute your income in a different way within the purview of article 41–2, Regulations 86.

"Furthermore, examination of the operating agreement dated December 18, 1916, between your corporation and your stockholding tenants, and of the report of referees dated September 24, 1933 [1923] relative to division of expenses and revenues, indicates clearly that said tenants are obligated to assume and pay all expenses of keeping up, maintaining, repairing and renewing the property in question and to pay all other expenses and liabilities incurred in the preservation and management of the property. The assumption of such obligation by your tenants and your method of accounting are regarded by this office as sufficient grounds for the conclusion that any losses you may sustain occasioned by wear, tear, and obsolescence or from other causes will be charged against and absorbed by your stockholding tenants."

was, because of Article 41–2 of Treasury Regulations 86 under the Revenue Act of 1934,[2] precluded from making any change in its method of accounting, as a basis for computing and reporting income, without first obtaining permission from the respondent. The Board affirmed the respondent's determination of deficiencies for that reason.

The respondent contends that the order of the Board should be affirmed not only for the reason relied upon by the Board, but also because, under the petitioner's arrangement with its stockholding tenants, any loss from depreciation of the depot was to fall upon them, and not upon the petitioner.

If it is true that, under their agreement with the petitioner, the tenants are to bear all losses due to exhaustion, wear and tear and obsolescence of the leased properties, the petitioner would not be entitled to an allowance for depreciation.[3]

■ The agreement of the stockholding tenants of the petitioner to bear the expense of preservation and renewal of the terminal facilities, particularly when considered in connection with the relationship of the tenants to the petitioner, lends color to the respondent's contention that it is upon them that losses due to depreciation are eventually to fall. We think, however, that the more reasonable interpretation of the terms of the agreement is that the tenants are obligated to bear the expenses of making all repairs and renewals that are necessary to keep the terminal facilities in good operating condition during the term of the lease. It seems improbable that the tenants, by agreeing to bear the cost of preserving the property and of repairs and renewals to the terminal facilities, intended to bind themselves to replace the present depot at the end of its useful life or to make good to the petitioner losses caused by the exhaustion and obsolescence of that structure. Our conclusion in this regard is in accord with the decision of this Court in Helvering v. Terminal Railroad Association of St. Louis, 8 Cir., 89 F.2d 739, which involved a lease of terminal properties by the terms of which the lessees were required to "maintain and keep the premises * * * in good condition and make all necessary repairs and renewals of the same." Page 740 of 89 F.2d. It was held that that lease did not require the lessees to completely replace leased structures, but meant that the leased properties were by repairs and renewals to be kept in good operating condition and that this obligation of the lessees would not prevent the lessor from taking deductions for depreciation. Compare, Cincinnati Union Terminal Co. v. Commissioner, 44 B.T.A. 905 promulgated July 8, 1941. The fact that the respondent has accepted the returns of the petitioner based upon the retirement method of accounting which does reflect depreciation[4] is some indication that he is not himself convinced that all depreciation of the petitioner's properties is to be borne by its tenants.

We think, as the Board evidently did, that the controlling question in this case is whether the setting up by the petitioner in 1935 of a reserve for the annual depreciation of its depot constituted a change in its method of accounting, so that it could not, in view of Article 41–2 of Treasury Regulations 86, compute its income tax liability for the years in question in accordance with its 1935 method of account-

---

[2] "Art. 41–2. Bases of computation and changes in accounting methods.—Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. A method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with reasonable consistency. * * *

* * * * * *

"A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this article, a change in the method of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions * * *."

[3] See and compare: Commissioner v. Terre Haute Elec. Co., 7 Cir., 67 F.2d 697, certiorari denied 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 1479; Georgia Ry. & Electric Co. v. Commissioner, 5 Cir., 77 F.2d 897, certiorari denied 296 U.S. 601, 56 S.Ct. 117, 80 L.Ed. 426; Atlantic Coast Line R. Co. v. Commissioner, 4 Cir., 81 F.2d 309, certiorari denied 298 U.S. 656, 56 S.Ct. 676, 80 L. Ed. 1382; Gulf, M. & N. R. Co. v. Commissioner, 5 Cir., 83 F.2d 788.

[4] See Southern Ry. Co. v. Commissioner, 4 Cir., 74 F.2d 887, 890; Chicago & N. W. R. Co. v. Commissioner, 7 Cir., 114 F.2d 882, 885, 886.

ing, without first obtaining the consent of the respondent.

█ There can be no doubt of the validity of the regulations referred to.[5] We are concerned only with their effect.

The petitioner's argument is in substance this: That it was not bound to compute its income for purposes of taxation in accordance with the accounting regulations of the Interstate Commerce Commission. That the Revenue Act of 1934, § 23 (*l*), c. 277, 48 Stat. 680, 689, entitled the petitioner, in computing its net income, to deduct "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." 26 U.S.C.A. Internal Revenue Acts, page 673, § 23 (*l*). That the depot constitutes such a large part of the petitioner's total investment that the inclusion of its cost as an operating expense in the year when the depot will be retired will seriously distort the petitioner's income for that year. That prior to 1935 the petitioner had made no record indicating that it intended to have the retirement method of accounting apply to its depot. That in setting up a reserve for annual depreciation of its depot in 1935 it merely noted in its accounts an item not previously noted. That the petitioner's books show this amount of accrued depreciation and the amount of cost unrecovered at the end of each year, and that an annual allowance of one per cent of the cost of the depot is a conservative allowance for depreciation. That to have applied to the respondent for leave to set up and to take an annual allowance for depreciation would have been futile.

█ It is true that the petitioner was not compelled to compute its taxable income on the basis of the accounting system prescribed by the Interstate Commerce Commission.[6] It was not bound to use any particular method of accounting for determining depreciation. Chicago & N. W. R. Co. v. Commissioner, 7 Cir., 114 F.2d 882, 887. The Revenue Act of 1934, § 41, 48 Stat. 694, 26 U.S.C.A.Int.Rev.Acts, page 679, provides that "The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

█ While the petitioner was not initially compelled to compute its income or report it in accordance with the retirement method, it did compute it in accordance with that method for the years prior to 1935, and the Board justifiably so found. The use of the retirement method for tax purposes, we think, constituted an election binding upon both the petitioner and the respondent. See, Pacific National Co. v. Welch, 304 U.S. 191, 194, 195, 58 S.Ct. 857, 82 L.Ed. 1282. That being so, we fail to see how the petitioner could set up a reserve for annual depreciation upon its depot without changing the accounting method previously used by it, or how it could for the first time for the year 1935 take a deduction for the annual depreciation of its depot unless the respondent granted it permission to depart from the retirement method of accounting with respect to that item. To argue that the retirement method of accounting which the petitioner has used does not clearly reflect its income, because that method will require it to charge off in one year the cost of one-third of its entire depreciable property, is to argue that the petitioner should be permitted to change its method of accounting for tax purposes. That argument, however, does not support the petitioner's contention that no change was made in its accounting method by setting up a reserve for annual depreciation of its depot. The respondent does not contend that the petitioner should be denied permission to use a method of accounting which will more fairly reflect its income in view of its large investment in the depot, but he does contend that it cannot use "a hybrid method of its own choosing" for tax purposes without affording him an opportunity to pass upon the propriety of its use.

[5] Brown v. Helvering, 291 U.S. 193, 204, 205, 54 S.Ct. 356, 78 L.Ed. 725; Chicago & N. W. R. Co. v. Commissioner, 7 Cir., 114 F.2d 882, 887.

[6] Kansas City Southern Railway Co. v. Commissioner, 8 Cir., 52 F.2d 372, 377, 378; Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 562, 52 S.Ct. 211, 76 L.Ed. 484.

The ruling of the respondent that the petitioner changed its method of accounting in 1935 and its basis for computing income has the support of a presumption of correctness, and the petitioner has the burden of proving it wrong. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. It is to be remembered that this Court can exercise none of the functions of the Commissioner of Internal Revenue or of the Board of Tax Appeals. If we were convinced that the petitioner ought to be allowed to compute its income tax liability on the basis used in its return for 1935 and that to require it to adhere strictly to the retirement method of accounting for income tax purposes was unjustifiable, that would be of no help to the petitioner. The respondent is vested with a wide discretion in deciding whether to permit or forbid a change in methods of accounting. "It is not the province of the court to weigh and determine the relative merits of systems of accounting." Brown v. Helvering, 291 U.S. 193, 204, 205, 54 S.Ct. 356, 361, 78 L.Ed. 725.

In the cases of Central Railroad Co. v. Commissioner, 35 B.T.A. 501, Chicago & N. W. R. Co. v. Commissioner, 39 B.T.A. 661, Chicago & N. W. R. Co. v. Commissioner, 7 Cir., 114 F.2d 882, certiorari denied 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128, and Cincinnati Union Terminal Co. v. Commissioner, 44 B.T.A. 905 which were relied upon by the Board, it was held that a taxpayer using the retirement method of accounting, and making its reports and tax returns in accordance with that method, might not change to a method whereby annual depreciation was set up with respect to a part of the taxpayer's property for the purpose of computing its tax liability, without first obtaining the consent of the Commissioner of Internal Revenue. The petitioner contends that these cases are not controlling because in none of them did the taxpayer have one-third of its investment in depreciable property in one structure. That consideration, however, only relates to the question of whether the petitioner should be permitted to change its method of accounting to one which will more fairly and clearly reflect its income, and does not at all affect the question as to whether setting up a reserve for annual depreciation of its depot in 1935 was a change of accounting method within the meaning of the applicable regulations.

Our conclusion is that the order of the Board was right for the reasons stated in the Board's opinion. Its order is affirmed.