**Harry COHN, Plaintiff,**

v.

**Harry C. WESTOVER, Defendant.**

**No. 15368-C.**

United States District Court
S. D. California, Central Division.

June 15, 1954.

Irell & Manella (Lawrence E. Irell), Los Angeles, Cal., for plaintiff.

Walter S. Binns, Los Angeles, Cal., (later Laughlin E. Waters), U S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U. S. Attys., Eugene Harpole, Sp. Atty., Internal Revenue Service, Los Angeles, Cal., for the Government.

Memorandum to Counsel

JAMES M. CARTER, District Judge.

This is an action by the plaintiff to recover $2,398.57 allegedly overpaid income tax for the year 1945. In his tax returns filed for the year 1945, plaintiff did not claim any depreciation on the yacht Jobella. In his claim for refund plaintiff contends this was an error, and that upon allowance of an amount for depreciation, recomputation of his tax will result in his being entitled to recovery of $2,398.57 taxes paid.

The claim for overpayment raises the issue as to the ownership of the yacht Jobella during the year 1945.

On December 31, 1941, at the outbreak of World War II, plaintiff turned over his yacht Jobella to the U. S. Maritime Commission. Its receipt for the vessel states that The Jobella was "requisitioned" by the U. S. Maritime Commission pursuant to Sec. 902 of the Merchant Marine Act of 1936, as amended, 46 U.S.C.A. § 1242. The vessel was physically returned to the owner's possession on August 5, 1946. Intervening acts of the parties and enactment on May 18, 1944 of Public Law 305, 78th Congress, 50 U.S.C.A. Appendix, §§ 1301–1304 are determinative of the relationship existing between the parties and the ownership of The Jobella during the year 1945 in question.

The Merchant Marine Act of 1936, as amended, supra, provided that, in periods of national emergency any vessel or watercraft necessary and useful to the nation might be requisitioned or purchased, or requisitioned for use. The Act further provides for payment of compensation to the owner by the United States, and charges the Maritime Commission with the determination of the nature of the taking, i. e., whether the taking was of ownership, or merely of use. As of the date of taking and continuously un-

til the execution of the contract of January 31, 1947, hereinafter referred to, no definitive action was taken by the government with respect to whether the taking was of the title or the use of The Jobella.

Meanwhile, on May 18, 1944, the Congress amended the Act of April 29, 1943, c. 81, 57 Stat. 69, 50 U.S.C.A.Appendix, §§ 1301 to 1305, concerning the return to owners of fishing vessels taken, to make this statute also apply to vessels of 1,000 tons or less and to Great Lakes vessels. Act of May 18, 1944, c. 199, §§ 1 to 4, 58 Stat. 224, as amended, 50 U.S.C.A. Appendix, §§ 1301 to 1304.

The Act of May 18, 1944, Public Law 305, 78th Congress, supra, by plain language as well as the legislative comment of the House Committee on Merchant Marine and Fisheries [1] was limited in application to vessels of which the United States had acquired ownership. The Committee stated that the purpose of the Act was to place owners of the vessels to be returned thereunder on parity with the owners whose vessels had merely been requisitioned for use. The construction of the Act was judicially adopted in American Dredging Co. v. Cochrane, 1950, 89 U.S.App.D.C. 88, 190 F.2d 106, 110.

The plaintiff and the government agencies involved carried on correspondence between 2/7/46 and the execution of a contract between them on 1/31/47. Plaintiff on 2/7/46 offered to accept the return of the vessel and $12,000 to reimburse for the use and repairs of the vessel. The agency rejected on 7/23/46 and offered $7,481 and the return of the vessel. On 7/29/46 plaintiff accepted this offer. We pause to note the ambiguous character of the offer and acceptance in view of the then existence of the Act of May 18, 1944 and Sec. 2 thereof, 50 U.S.C.A.Appendix, § 1302. This offer and acceptance could be interpreted to involve either a taking of title *or* use by the government.

Exhibit 13, a wire from the agency on August 2, 1946 referred to "agreed purchase price," but on August 5, 1946, by Exhibit 9, the agency advised the wire was in error and stated further "You take delivery of vessel and payment will be made to you subsequently."

Plaintiff took possession of the vessel on August 5, 1946. A voucher was prepared on September 30, 1946, payable to plaintiff for the amount set forth in the wire of plaintiff's acceptance, to wit, $7,481. Payment was made some time in 1947 (Pre-Trial Stipulation, page 4, line 28 et seq.).

On January 31, 1947, subsequent to the return of the vessel the parties entered into a written contract relating to the title and compensation for the use of the vessel. Plaintiff does not assert that there was any duress, coercion or fraud in the execution of the document and specifically admits that he had advice of capable legal counsel prior to his execution of said contract.

By the contract [Exhibit 5] the parties agree that the adjustment of the dispute was made under Sec. 2 of the Act of May 18, 1944, 50 U.S.C.A.Appendix, § 1302; that the government took title in 1941 and determined just compensation to be $10,500; that the owner was to take back title to the vessel and repay the $10,500 less cost of reconditioning, determined to be $5,075 and allowance for use, determined to be $2,406.

This was clearly the procedure outlined by the Act of May 18, 1944, supra. The parties short cut the exchange of checks and the government paid plaintiff $7,481 (a total of the items for reconditioning and use). Pursuant to the agreement, plaintiff on 1/31/47 executed a bill of sale to the Maritime Commission as of 12/31/41 and the Maritime Commission executed on 3/13/47 a bill of sale to the plaintiff, effective as of the date of delivery of the vessel back to plaintiff (8/5/46).

1. 1944 U.S.Code & Cong.Serv. p. 1053.

Plaintiff contends that the wires and correspondence created a contract for payment for use without taking title in the government. We have commented on the ambiguous character of the offer and acceptance. But in any event the parties reduced their negotiations into a written contract. This contract controls whether it be the first contract of the parties or a novation after a contract reached by the wires.

Simply stated then, the situation is one where after years of uncertainty as to whether title or use was taken, plaintiff agreed in writing that the government had taken title in 1941. Pursuant to the contract he got title back on August 5, 1946. Such an agreement was based on an express statute providing for such a procedure. The plaintiff therefore had no title to The Jobella in the year 1945.

■ Plaintiff asks the court to look through form to substance and hold he was the owner of the vessel in 1945. "In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding." Helvering v. F. & R. Lazarus & Co., 1939, 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226. But the question in each case is in part a factual one —what was the intention of the parties? The Helvering case, supra, held that findings supported by evidence which permit conflicting inferences, are binding on an appellate court. Commissioner of Internal Revenue v. H. F. Neighbors Realty Co., 6 Cir., 1936, 81 F.2d 173, at page 175, proceeds on the same premise. The other cases relied on by plaintiff, Washmont Corp. v. Hendricksen, 9 Cir., 1943, 137 F.2d 306; U. S. v. Title Guarantee & Trust Co., 6 Cir., 1943, 133 F.2d 990; Commissioner of Internal Revenue v. Proctor Shop, 9 Cir., 1936, 82 F.2d 792; Arthur R. Jones Syndicate v. Com'r, 7 Cir., 1927, 23 F.2d 833, show the same inquiry into the intent of the parties.

■ Here we find plaintiff's intent was to treat the transaction as one passing title in 1941 to the government and a return of title in 1946. By 1946 there were two statutes which could have been applied to the situation, the Act of May 18, 1944, 50 U.S.C.A.Appendix, § 1302, dealing with the "title route" and the Merchant Marine Act of 1936, 46 U.S.C.A. § 1242, dealing with the "use route" (as well as a title route). The parties choose to classify their transaction under the former statute.

Such alternative paths provided by statute were not present in any of the cases (supra) relied on by plaintiff.

Decision will be for defendant. Findings and judgment to be prepared pursuant to the rules of this court.